Argued and submitted September 27, 2007, reversed April 2, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WILLIAM EUGENE MACK,
*Defendant-Appellant.*

Marion County Circuit Court
03C-52412, 04C-43462

A125332 (Control); A125333

183 P3d 191

Rebecca Duncan, Chief Deputy Public Defender, argued the cause for appellant. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim and Sercombe, Judges.

EDMONDS, P. J.

Sercombe, J., dissenting.

## EDMONDS, P. J.

Defendant appeals a judgment of conviction for child neglect in the first degree under ORS 163.547(1)(a) (2001), *amended by* Or Laws 2005, ch 708, § 2.[1] On appeal, he argues that the evidence based on facts stipulated by the parties is legally insufficient to convict him under that statute. We agree and reverse.

At trial before the trial court and without a jury, the parties stipulated to the following facts:

"1.   On or about August 19, 2003, in the course of investigating a death[,] the Keizer Police spoke to Stephanie Miller[.]

"2.   Ms. Miller has a son, [S], who also lived at [Miller's residence].

"3.   [S] is 3 years-old, under the age of 16 years[-]old.

"4.   The defendant was staying with Ms. Miller at the residence but left on August 19, 2003[,] and did not return.

"5.   The Keizer Police began preparations on August 19, 2003, to search [Miller's residence] pursuant to a search warrant. Authorities secured the residence until it was searched a day or two later.

"6.   Ms. Miller told the Keizer Police they would probably find drugs in the residence because she thought that her boyfriend, William Eugene Mack, the defendant in this case, was dealing marijuana.

"7.   Ms. Miller told the Keizer Police that Mr. Mack had a room in the residence that 'belonged' to Mr. Mack. She said she was permitted to enter the room only when Mr. Mack was there. She was allowed a few times to enter without Mr. Mack's presence to enter only to feed his fish that were in that room.

---

[1] Defendant pleaded guilty to charges of possession of a Schedule I controlled substance and unlawful possession of a short-barreled shotgun arising out of the same incident. He also was found guilty of the charge of delivery of a Schedule I controlled substance. The child neglect conviction is the only subject of defendant's appeal.

"8.   Ms. Miller told the Keizer Police that until recently the room was locked all the time. Recently Mr. Mack had begun leaving the room unlocked.

"9.   When the police searched [Miller's residence] they found the room unlocked. They also found indications in the room that it was used by Mr. Mack and not Ms. Miller, such as photographs of the defendant with his friends and documents belonging to him.

"10.   Found in the room were three glass smoking pipes, all of which appeared to have been used to smoke marijuana, a small digital scale, a number of used and unused zip lock and vacuum seal baggies. The used baggies appeared to contain marijuana residue. Also found in the room was a baggie with marijuana in it.

"11.   The Keizer Police also found $13,000 in currency in a box in the room. Also in the box were vacuum seal bags with marijuana residue in them and drug transaction records.

"12.   In a gym bag in the room the Keizer Police found an undated handwritten note from [M]s. Miller to Mr. Mack stating 'I love you so much! You are the sweetest, coolest drug dealer in the world. So are you gonna come party tonight at my house? Love, Stefani, your love.' Also in the room was a box with 1440 rounds of 7.62 ammunition.

"13.   In the garage of the residence was a top opening freezer. On top of the freezer was, among other items, a small plastic garbage can. In the garbage can were marijuana stems and leaves, an unloaded sawed off shotgun **(New England firearms, serial number NG454989)**, and a paper bag containing a smoking pipe with marijuana residue. The bags were vacuum sealed in 'Food Saver' vacuum bags.

"14.   Found in the top opening freezer in the garage of the residence was a black gym bag. Contained in the bag were two baggies of marijuana. The net weight of one baggie was 54.0 grams. The net weight of the other baggie was 109.1 grams.

"15.   Also in the gym bag was a receipt dated May 27, 2003, for the Cozy Cove Inn for William Mack.

"16.   The net weight of the marijuana found in 'Mr. Mack's room' was 8.9 grams. The total net weight of the marijuana found and weighed as listed is 172 grams.

"17.   The police found a 'Food Saver' vacuum seal machine sitting on the kitchen counter of the residence.

"18.   On August 21, 2003, Stephanie Miller told Keizer Police that Mr. Mack was 'probably selling drugs.' She also told the Keizer Police that Mr. Mack had people at [Miller's residence] all the time and he sometimes went places she was not allowed to go.

"19.   No shells for the shotgun were found.

"20.   Much later the Keizer Police were given a rifle said to have been found in the attic of the residence that the ammunition rounds found in 'Mr. Mack's room' was compatible with.

"21.   Detectives familiar with the distribution of controlled substances are of the opinion that the quantity of drugs found, the transaction records, the packaging materials and the cash were consistent with the delivery of marijuana for profit."

(Boldface in original.)

■■   After the evidentiary record was closed, defendant did not move for a judgment of acquittal as a means to challenge the legal sufficiency of the evidence. However, such a motion is not necessary so long as a defendant clearly raises the issue in closing argument. *State v. Forrester*, 203 Or App 151, 155, 125 P3d 47 (2005), *rev den*, 341 Or 141 (2006). Whether defendant clearly raised the issue in closing argument to the trial court that he now raises on appeal is the first issue that we must decide in this case.

In order to frame that issue appropriately, we begin by setting out the elements of ORS 163.547(1)(a) (2001), the statute in effect at the time defendant committed the predicate conduct. It provided, in part,

"A person *having custody or control of a child* under 16 years of age commits the crime of child neglect in the first degree if the person knowingly leaves the child, or *allows the child to stay*:

"* * * * *

"(B) On premises and in the immediate proximity where controlled substances are criminally delivered or manufactured for consideration or profit[.]"

(Emphases added.) Thus, under ORS 163.547(1)(a)(B) (2001), the state was required to prove (1) that defendant had "custody or control" over S; and (2) that defendant allowed S "to stay"; (3) on premises and in the immediate proximity where controlled substances were delivered or manufactured. Only the first two elements are at issue here.

On appeal, defendant argues that the trial court erred in convicting him of first-degree child neglect because the state did not prove that he had "custody or control" over S. That is, defendant argues that the state failed to prove the first element that it was required to prove under ORS 163.547(1)(a)(B) (2001).

The state responds that defendant's claim on appeal is unpreserved:

"[Defendant] contends that the state did not prove that he had 'custody or control' of the child victim. Defendant did not preserve that claim below and, therefore, this court should not consider it on its merits. Below, in this stipulated facts trial to the court, defendant argued that the state's proof was insufficient, but in a different respect. There, he argued that the state had failed to prove that he had 'allow[ed] the child to stay' at the home where defendant was living with the victim, his brother, and their mother. Defendant should not be allowed to alter his claim on appeal."

For the reasons explained below, we conclude that, in the circumstances of this stipulated-facts trial, defendant's argument below preserved the claim of error that he raises on appeal.

ORAP 5.45(1) states that "no matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court." Our inquiry is therefore guided by case law that has interpreted that provision. Preservation for purposes of appellate review ultimately depends on whether a party has provided the trial court with an explanation that is specific enough to ensure that the court can identify its alleged error, *State v. Wyatt*, 331 Or 335, 343, 15

P3d 22 (2000), and must be decided on a case-by-case basis. To assist in that endeavor, the Supreme Court has distinguished between the "raising of an issue" in the trial court, which is always required, the identification of a source of law for a claimed position, which is less essential, and the making of a particular argument, which is least essential to compliance with the doctrine. *State v. Hitz*, 307 Or 183, 188-89, 766 P2d 373 (1988). Accordingly, where the broad legal issue has been adequately identified to the trial court, the issue will be deemed preserved for purposes of appeal. *Gadda v. Gadda*, 341 Or 1, 7, 136 P3d 1099 (2006).

In light of the above legal principles, we turn to the record in this case. Count 5 of the indictment alleges that defendant

> "on or between 6/18/03 and 8/19/03, in Marion County, Oregon, having custody and control of [S,] a child under 16 years of age, did then and there unlawfully, feloniously, and knowingly allow the child to stay in the premises and in the immediate proximity where controlled substances were being criminally delivered for consideration or profit."

Just before defense counsel addressed the court in closing argument, the prosecutor told the court,

> "Moving on [to] the child neglect [charge], the elements that must be prove[d] are basically that the defendant was involved in a controlled substance enterprise for profit and allowed a child to remain in the home. Well, again, it's—there's no issue that a child was also residing in this home where he maintained, at least, the operation of his controlled substance enterprise."

Defense counsel responded:

> "Finally, if you agree with the state that the children are in the immediate proximity of the delivery, the other thing the state has to prove is that [defendant] has allowed the children to be there. The child is not [defendant's] child. [The state is] sort of coming at it backwards, but this is not any way in the statute. He doesn't have any control to say: [']You can't be here[,] young [S].['] It's not his child. The child belongs to [S's mother].
>
> "Yes, [defendant] could, if he stored his stuff elsewhere; but if he stores it else—I mean the statute says he has to

allow the child to be there. And him being there and doing what the state claims he's doing when he doesn't have enough control over the child to be, if you will, exclude the child means he—he's not allowed in the—he's not allowing the child to be there; it's not under his ability to do."

As noted above, on appeal, defendant argues that

"there was no evidence that defendant had any authority over the child. Defendant was not the child's parent, and there was no evidence that he ever served as the child's custodian, even on a temporary basis. Because defendant had no right or duty to control the child, the trial court erred by convicting him of first-degree child neglect."

In deciding the preservation issue, we must consider defense counsel's argument in the context of the indictment and the prosecutor's argument. Here, the principles of preservation are satisfied because defense counsel addressed the fact that the prosecutor had ignored the "custody or control" allegation in the indictment.

The first relevant statement that defense counsel made to the court in his argument was, "the other thing the state has to prove is that [defendant] has allowed the children to be there." Considered in isolation, the statement could appear to refer only to the second element of the offense, but taken in the context of the stipulated facts and what the prosecutor had argued, it takes on a different connotation, as evidenced by the statements made by defense counsel thereafter. Defense counsel continued, "[t]he child is not defendant's child[;] [The state is] sort of coming at it backwards, but this is not any way in the statute. He doesn't have any control to say[,] [']You can't be here[,] young [S].['] It's not his child. The child belongs to [S's mother]." (Emphases added.) In other words, defense counsel responded to the prosecutor's failure to address the first element of the offense by pointing out that defendant is not a person who has custody or control over the child as the indictment alleges and as ORS 163.547(1)(a) (2001) required the state to prove.

In the second portion of his remarks, defense counsel continued to assert that defendant "doesn't have enough control over the child to * * * exclude the child * * * he's not allowing the child to be there; it's not under his ability to do

*so.*" (Emphases added.) When understood in the context of the prosecutor's argument and the stipulated facts, the only conclusion that can be drawn from the repeated references by defense counsel to the fact that defendant is not S's parent and had no authority or ability to control S's presence on the premises is that he was referring to the purported absence of any stipulated fact that addressed the allegation that defendant had custody or control over S during the dates alleged in the indictment. Consequently, we reject the state's argument that the issue of the sufficiency of the evidence to demonstrate that defendant had custody or control over S was not adequately preserved.[2]

■     Having established that defendant preserved his claim of error, we turn to the merits. In response to defendant's insufficiency of the evidence argument, the state, relying on *State v. Reiland*, 153 Or App 601, 958 P2d 900 (1998), argues that the stipulated facts are sufficient to show that defendant had "control" over the victim. According to the state,

> "defendant exercised considerable control over the premises. Defendant exercised so much control that he had a room in the house that 'belonged' to him, that generally was locked, and that the victim's mother, the 'resident' of the house, usually was not permitted to enter if defendant was not there. Given defendant's control of the premises, he had 'authority over the child by virtue of [his control] of the place.' *Reiland*, 153 Or App at 605. The evidence, therefore, was sufficient to prove he had control over the victim."

As the state implicitly concedes, there is no inference available from the stipulated facts, even viewed in the light most favorable to the state, that would permit a rational trier of fact to find beyond a reasonable doubt that defendant had custody of S. The remaining issue, therefore, is whether there

---

[2] The dissent disagrees with our analysis and points to the fact that neither the prosecutor nor the trial court addressed defense counsel's remarks regarding the fact that defendant was not the parent of S and had no control over him. In our view, whether the trial court or the prosecutor addressed the argument is of little import. What is determinative is whether the trial court had a reasonable opportunity to consider and rule on the issue raised by defendant.

is a reasonable inference from the stipulated facts that defendant exercised "control" over S through his exercise of control over the premises.

In *Reiland*, the defendant appealed from a judgment of conviction on four counts of endangering the welfare of a minor and argued on appeal that those convictions should merge with her convictions on four counts of first-degree child neglect. We agreed with the defendant's argument, reasoning,

> "The state argues that the child neglect prohibition against allowing a child to stay in a place where drugs are sold or used requires proof that the person has authority over the child, while the child endangerment prohibition against permitting a child to remain requires proof that the person has authority over the place. That is a distinction without a difference. The owner of a place where drugs are being sold or used has authority over the child by virtue of the person's ownership of the place, just as others have authority over the child by virtue of their positions as parent, guardian, teacher, or public official. Contrary to the state's argument, a person with custody and control of a child certainly does have the authority to prohibit the child from remaining in a place, notwithstanding the fact that the person has no authority over the place."

153 Or App at 604-05.

It can be inferred from the stipulated facts in this case that defendant exercised control over his room because he generally kept it locked and because Miller ordinarily was permitted to enter the room only when defendant was there. But the indictment alleges that defendant allowed S "to stay in the premises and in the immediate proximity" of where drugs were being sold. Morever, the focus of the state's argument below and on appeal is not solely on the drugs that were found in defendant's room, but rather on the drugs and contraband found throughout the residence and the garage. As defense counsel pointed out to the trial court, defendant had no authority to exclude S from being present at Miller's residence. It follows that our explanation in *Reiland* is inapplicable to the facts in this case, where defendant was neither S's custodian, nor did he have the authority to exclude S from Miller's residence.

That conclusion leads to another observation. As stated above, the only contested issue based on the allegations in the indictment and the stipulated facts was whether defendant could *control* the whereabouts of S while the drug activities occurred on the premises. If defendant were vested with control over the premises, then it would follow that he had the authority to allow or not allow S to be on the premises. But if he did not have authority to control S's person and had no ability to control S's presence on the premises, then he cannot be said to have had control of S for purposes of the statute. In other words, the first and second elements of the offense, in light of the stipulated facts in this case, become conflated into one element for purposes of determining whether the state proved the allegations of first-degree child neglect.[3] Because there is no evidence in the stipulated facts or an available inference from the stipulated facts that would permit a rational factfinder to find beyond a reasonable doubt that defendant exercised control over S's person or had the authority to exclude S from the Miller residence, it follows that the trial court erred when it convicted defendant of first-degree child neglect.

Reversed.

**SERCOMBE, J.,** dissenting.

I respectfully disagree with the majority's conclusion that a claim of insufficient proof of one element of a crime—that defendant had "custody or control" of S—was preserved by defendant's objection that the state failed to prove a different element of the crime—that the defendant had "allowed [S] * * * to stay" in proximity to the drug enterprise. That lack of preservation was the reason why neither the prosecutor nor the trial court addressed the issue in the proceedings below. Because defendant's objection to the sufficiency of the proof of this discrete element of the crime was not clearly raised, I dissent from the reversal of defendant's conviction for insufficiency of evidence on that element of the crime.

---

[3] That observation is relevant also to the preservation issue, discussed above. In the circumstances of this case—and in light of the facts to which the parties stipulated—defense counsel's argument to the court cannot reasonably be interpreted to have excluded the argument that the state had failed to prove the "custody or control" element of first-degree child neglect.

At the time of the incident, ORS 163.547(1)(a)(B) provided:

> "A person having custody or control of a child under 16 years of age commits the crime of child neglect in the first degree if the person knowingly leaves the child, or allows the child to stay:

> "* * * * *

> "(B) On premises and in the immediate proximity where controlled substances are criminally delivered or manufactured for consideration * * *[.]"[1]

The statute requires proof both that defendant had "custody or control" of [S] and that he knowingly left [S] or "allow[ed] [S] to stay" on the premises and in immediate proximity of drug activities.

The requirement of "custody or control" over the child is part of what distinguishes the crime of child neglect in the first degree from the crime of endangering the welfare of a minor under ORS 163.575(1). With respect to proximity to drug activities, the latter crime requires only that a person "[p]ermit[ ] a person under 18 years of age to enter or remain in a place where unlawful activity involving controlled substances is maintained or conducted." ORS 163.575(1)(b). What makes the crime of first-degree child neglect a Class B felony compared with the Class A misdemeanor of endangering the welfare of a child is the required proof that a person have "custody or control" of a child in addition to evidence that the child was allowed or permitted to stay on drug premises. ORS 163.547(1)(a)(B).

The state argues that defendant confined his argument before the trial court to the contention that there was insufficient evidence to show that he "allowed [S] to stay" on the premises and that he did not preserve the argument that he makes on appeal, specifically that there was insufficient evidence that he had "custody or control" over S. At the stipulated facts trial, defendant's counsel stated:

---

[1] ORS 163.547(1)(a)(B) was amended in 2005 to change the word "on" to "in or upon" in subparagraph (B) and to add other language not relevant to this case. Or Laws 2005, ch 708, § 2.

"On the child neglect charge, * * * I'm not going to argue that things happening in the residence are not—don't meet the immediate proximity standard, because I think they do * * *.

"* * * * *

"* * * [I]f you agree with the state that the children are in the immediate proximity of the delivery, the other thing the state has to prove is that [defendant] has allowed the child to be there. The child is not [defendant's] child. * * * He doesn't have any control to say: You can't be here [child]. It's not his child. * * *

"* * * [T]he statute says he has to allow the child to be there. And him being there and doing what the state claims he's doing when he doesn't have enough control over the child to be, if you will, exclude the child means he—he's not allowed in the—he's not allowing the child to be there; it's not under his ability to do."

In the trial court proceedings, the state conceded that defendant "could not exclude the child," but said that he could exclude himself and the drug enterprise from the household and the children. The trial court agreed with the state and found that defendant "did knowingly allow a child to stay in premises in the immediate proximity of the controlled substances and other materials[.]" The trial court went on to find that,

"even if [defendant] did not have the authority to remove the child from the premises, he knew that the child was there. He knew that the drugs and other paraphernalia were there. And by failing to remove the drugs and the paraphernalia, he thereby allowed the child to be at the residence in close proximity to where controlled substances were being constructively delivered."

Thus, the state, defendant, and the trial court focused below on whether the evidence was sufficient to show that defendant "allow[ed] [S] to stay" at the home, rather than whether he had "custody or control" over S. On appeal, the issue is whether defendant preserved the claim that the evidence was insufficient to prove "custody or control" over S.

Generally, an issue not preserved in the trial court will not be considered on appeal. *Ailes v. Portland Meadows,*

*Inc.*, 312 Or 376, 380, 823 P2d 956 (1991). Therefore, a challenge to the sufficiency of the evidence must be preserved to be considered on appeal, unless it is plain error. *State v. Paragon*, 195 Or App 265, 268, 97 P3d 691 (2004); *State v. Hockersmith*, 181 Or App 554, 557-58, 47 P3d 61 (2002). "To preserve an issue for appellate review, a defendant must provide an explanation of his or her position to the trial court that is specific enough to permit the trial court to address and correct the error." *State v. Liviu*, 209 Or App 249, 252, 147 P3d 371 (2006); *see also State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000); *Paragon*, 195 Or App at 268 (when challenging the sufficiency of the evidence, a defendant must state the "specific theory on which the state's proof was insufficient" in order to preserve it for appeal).

The purposes of preservation requirements imposed as part of judicial review are to promote both fairness to the parties in making and responding to arguments asserted in a case and efficient judicial administration. *Peiffer v. Hoyt*, 339 Or 649, 656, 125 P3d 734 (2005). To these ends, ORAP 5.45(1) formalizes the requirement of preservation of error in the Oregon appellate courts and provides, in part:

> "No matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, provided that the appellate court may consider an error of law apparent on the face of the record."

In this case, defendant's advancement of a "specific theory" on the sufficiency of the evidence on the "allow * * * to stay" element of the child neglect crime was insufficient to "clearly challenge" the sufficiency of the evidence on a different element, the "custody or control" part of the crime. Both the prosecutor and the defense counsel focused their arguments exclusively on the "allow * * * to stay" element. Defense counsel in fact stated that, apart from proximity to drug activity, *"the other thing the state has to prove is that* [defendant] has allowed the child to be there." The parties' arguments to the court, at best, show different perspectives on the meaning of the "allow * * * to stay" element of the crime. Defendant viewed the issue as one of functional control over the actions of S; the state presented the question as

one of functional control over the location of the drug enterprise. But defendant never advanced the theory that he did not have "custody or control" over S in the sense of a legal right or duty to regulate the actions of S. Instead, defendant argued that he had insufficient "control" to "allow" S to do anything. The arguments of the parties never joined on the "custody or control" issue.

For all that we know, the stipulated facts were framed by the prosecutor and defense counsel solely to set the context for deciding the core issue that both thought to be material—whether defendant allowed S to stay on the premises and in immediate proximity of drug activity. It would be unfair to the state to allow defendant to make his contention for the first time on appeal, and, in so doing, divest the state of the opportunity to present its arguments on that topic to the trial court or to frame the stipulated facts differently.

The trial court viewed the issue presented as solely whether defendant allowed S to remain in proximity to the controlled substances activities. The trial court found:

> "On Count 5, the Child Neglect in the First Degree, I find that [defendant] is guilty of that crime beyond a reasonable doubt. I find that *he did knowingly allow a child to stay in premises* in the immediate proximity of the controlled substances and other materials that I mentioned that amounted to constructive delivery in Count 3."

(Emphasis added.) Had defendant explicitly objected to the sufficiency of proof on the custody or control element of the child neglect crime, and had the trial court agreed with that objection, the court might have convicted defendant on the lesser included offense of endangering the welfare of a child. ORS 136.465 (verdict where crime or attempt included within charge). Defendant's silence inhibits the administration of justice in that regard.

The majority recognizes that defense counsel never explicitly argued that the evidence was insufficient to show the lack of "custody or control" under the statute. The majority, however, contends that the argument was implicit and preserved because defense counsel twice mentioned lack of

"control" in the context of arguments about whether defendant "allow[ed] * * * [S] to stay" in proximity to drug activities. It is quite true that both the "custody or control" and "allow * * * to stay" elements of the crime *could* have overlapping proof about functional control of the child. Some persons with sufficient "control" over a child *could* be deemed to "allow * * * [the child] to stay" near the drug operations. Because of this potential, the majority concludes that defense counsel's argument that the evidence was insufficient to prove the "allow * * * to stay" element because "defendant doesn't have enough control over the child to * * * exclude the child" was also an argument that the evidence was insufficient to prove a lack of "custody or control."

But it is also true that proof of the different elements of this crime could have different evidentiary bases. A person with custodial obligations to a child may not necessarily "allow * * * [the child] to stay" in proximity to drug activities. Indeed, if the reasoning of the trial court is correct (which we need not decide), a person with *no* control over a child could violate ORS 163.547(1)(a)(B) by a showing of custodial obligations to the child and proof that the defendant did not remove the drug activities from their proximity to the child. Suffice it to say that an argument about a failure of proof on the "allow * * * to stay" element because of lack of control is not necessarily an argument that there is no proof of "*custody* or control."

A motion for a judgment of acquittal is the best method of challenging the sufficiency of the state's evidence. We allow such a challenge in defense counsel's closing argument "as long as a defendant clearly raises the issue in closing argument." *State v. Forrester*, 203 Or App 151, 155, 125 P3d 47 (2005), *rev den*, 341 Or 141 (2006). A closing argument about the insufficiency of proof on one element of a crime does not "clearly raise" an argument of insufficient proof of another element, merely because proof of both elements could overlap.

In my view, defendant's appeal fails because he did not preserve the sufficiency of the evidence contention that he now advances on appeal. Defendant's newly articulated position is too late to permit meaningful rejoinder by the

prosecutor and full consideration by the trial court, including a conviction for the lesser included offense of endangering the welfare of a child.

For the above reasons, I dissent.