Argued and submitted April 20, reversed September 2, 2009

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT GENE BAINBRIDGE,
*Defendant-Appellant.*

Multnomah County Circuit Court
Z1233105; A135756

216 P3d 338

Michael E. Rose argued the cause for appellant. With him on the brief was Steenson, Schumann, Tewksbury, Creighton and Rose, P.C.

Michael R. Washington, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant appeals a judgment of conviction for driving through a safety zone, ORS 811.030, a Class B violation. Before the trial court, defendant argued that the evidence was insufficient to establish the elements of the offense. Defendant reasserts that argument on appeal.[1] We conclude that the evidence was insufficient to prove all of the elements and reverse.

In an appeal from a judgment involving a violation, "the standard of review is the same as for an appeal from a judgment in a proceeding involving a misdemeanor or felony." ORS 138.057(1)(a). We review challenges to the sufficiency of the evidence following a conviction by examining the evidence in the light most favorable to the state to determine whether "any rational trier of fact could have found that the essential elements of the [violation] had been proved" by a preponderance of the evidence.[2] *State v. Paragon*, 195 Or App 265, 267, 97 P3d 691 (2004).

The following facts are undisputed. Defendant was driving east on Highway 30 near Sauvie Island, Oregon, when he came upon construction workers blocking traffic. The construction workers had blocked the eastbound lane with trucks and flags, and a tractor-trailer carrying a large piling was passing through the work area. Instead of stopping, defendant crossed the double yellow line to get around the trucks, and he was stopped by Officer Volker. Volker testified as follows:

> "I was patrolling the Sauvie Island work zone for speeders and other people who violated federal workers in the zone that day. There are cones that mark the zone.
>
> "There [are] speed signs that say 'reduced speed,' * * * and, at this point, I was sitting off to the side of the road watching traffic.

---

[1] Although defendant did not move for a judgment of acquittal to challenge the legal sufficiency of the evidence, "such a motion is not necessary so long as a defendant clearly raises the issue in closing argument." *State v. Mack*, 219 Or App 119, 123, 183 P3d 191, *rev den*, 345 Or 301 (2008).

[2] The state, municipality, or political subdivision has the burden of proving the charged violation by a preponderance of the evidence. ORS 153.076(2).

"The traffic had stopped because the workers were bringing a new piling in, [a] huge piling on a semi-truck, and they had—on either side of the road—they had two vehicles blocking the westbound lanes and two vehicles blocking the eastbound lanes.

"On these vehicles, they had flags out * * * so no traffic was traveling through the work zone at this time because of the big semi-truck bringing the piling in before taking it down to the river.

"At this time, I heard workers screaming. I looked over and saw a white vehicle go around the two trucks with flags out, traveling eastbound, crossing the double yellow line, and continue[ ] eastbound, until I stopped him at the bridge.

"I contacted the driver, identified as [defendant] * * * by the Oregon Driver's License, and he told me, * * * 'I slowed down for the big truck, at least. I didn't know * * * why the other trucks were blocking the road.'

"The construction workers were really upset about this and they were distraught because they were in the roadway working and they didn't want to get hit."

On cross-examination, defendant asked Volker about the work zone:

"[DEFENDANT]:   Were you aware of any safety zones that are exclusively marked for pedestrians in that area?

"DEPUTY VOLKER:   No.

"* * * * *

"[DEFENDANT]:   [Are] there clear markings that set this zone area apart within that roadway for the exclusive use of pedestrians?

"DEPUTY VOLKER:   It is a construction safety zone that is—

"[DEFENDANT]:   But, it—I'm sorry. Go ahead.

"DEPUTY VOLKER:   [I]t is a highway work zone. There are people going to be in the roadway and that's what a highway work zone is."

Defendant assigns error to the trial court's conclusion that "there was sufficient evidence to prove * * * all of

the elements of the offense of Driving Through a Safety Zone." Specifically, defendant argues that "there was no evidence in the record that there was a safety zone in the area for defendant to have driven through." The state responds that "the record supports defendant's conviction for driving through a safety zone."

A person commits the offense of driving through a "safety zone" if that person drives into an area "officially set apart * * * for the exclusive use of pedestrians":

> "The driver of a vehicle commits the offense of driving through a safety zone if the driver at any time drives through or within any area or space officially set apart within a roadway for the exclusive use of pedestrians and which is protected or is so marked or indicated by adequate signs as to be plainly visible at all times while set apart as a safety zone."

ORS 811.030(1).[3]

Defendant asserts that the evidence was not sufficient to establish that the area he drove into was a "safety zone" because (1) the area was not "marked for the exclusive use of pedestrians" and (2) "vehicular traffic was permitted through the work zone as a general matter." Accordingly, defendant concludes, "[o]n the record before the court, no rational finder of fact could have concluded, by a preponderance of the evidence or otherwise, that defendant had driven through a safety zone."

The state first responds that, "[t]he evidence supports an inference that a safety zone existed within the highway work zone because the area at issue was set apart within the roadway, protected, and marked by adequate signs." The state also argues that, "[b]ecause some of the highway workers present in the highway work zone qualified as pedestrians, and because the record supports an inference that they controlled access to the zone, that area could be considered as

---

[3] In contrast to a "safety zone," a "highway work zone" is statutorily defined as "an area identified by advance warning where road construction, repair or maintenance work is being done by highway workers on or adjacent to a highway, regardless of whether or not highway workers are actually present." ORS 811.230(1)(b).

designated for the exclusive use of pedestrians as described in ORS 811.030."

The parties' arguments frame an issue of statutory construction. Specifically, we must construe the phrase, "for the exclusive use of pedestrians." In construing a statute, we first look to the statute's text in context. *State v. Gaines*, 346 Or 160, 171-72, 175, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). A "pedestrian" is defined by statute as "any person afoot or confined in a wheelchair." ORS 801.385. In contrast, the words "exclusive" and "use" are terms of common usage and are not statutorily defined. Consequently, we define those words according to their plain, natural, and ordinary meaning. *Gaines*, 346 Or at 175. The word "exclusive" is defined as "limiting or limited to possession, control, or use (as by a single individual or organization or by a special group or class)." *Webster's Third New Int'l Dictionary* 793 (unabridged ed 2002). The word "use" is defined as "the privilege or benefit of using something." *Webster's* at 2523. Thus, as statutorily defined, an area set apart "for the exclusive use of pedestrians" is an area where the "privilege or benefit of using" is limited to a single group—pedestrians.

Here, the evidence establishes that at least one vehicle—a tractor-trailer carrying a large piling—was authorized to enter the work area. The driver of that tractor-trailer was not a "person afoot" or "in a wheelchair" when he or she entered the work area and had the privilege or benefit of the use of the work area. Accordingly, the evidence establishes that the work area was not "set apart * * * for the exclusive use of pedestrians" as the definition of a "safety zone" requires. Accordingly, we conclude that the evidence before the trial court, viewed in the light most favorable to the state, was not sufficient as a matter of law to allow any rational trier of fact to find by a preponderance of the evidence that defendant violated ORS 811.030.

Reversed.