Submitted July 15, affirmed October 29, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BAOLIN CHEN,
*Defendant-Appellant.*

Beaverton Municipal Court
UI20475312; A155150

338 P3d 795

Baolin Chen filed the brief *pro se.*

No appearance for respondent.

Before Lagesen, Presiding Judge, and Tookey, Judge, and Edmonds, Senior Judge.

TOOKEY, J.

**TOOKEY, J.**

Defendant appeals a judgment of conviction for impeding traffic, ORS 811.130,[1] a Class D traffic violation. Defendant argued to the municipal court that there was insufficient evidence to convict him of the offense, and he reasserts those arguments on appeal. For the reasons that follow, we affirm.

In an appeal from a judgment involving a violation, "the standard of review is the same as for an appeal from a judgment in a proceeding involving a misdemeanor or felony." ORS 138.057(1)(a). When we review a challenge to the sufficiency of the evidence following a conviction, we examine the evidence "in the light most favorable to the state to determine whether any rational trier of fact could have found that the essential elements of the violation had been proved by a preponderance of the evidence."[2] *State v. Bainbridge,* 230 Or App 500, 502, 216 P3d 338 (2009) (stating the standard of review for an appeal involving the offense of driving through a safety zone, ORS 811.030) (internal quotation marks and brackets omitted).

The record discloses the following facts. At approximately 3:00 p.m., on a summer afternoon, Kingsbury, a

---

[1] ORS 811.130 provides:

"(1) A person commits the offense of impeding traffic if the person drives a motor vehicle or a combination of motor vehicles in a manner that impedes or blocks the normal and reasonable movement of traffic.

"(2) A person is not in violation of the offense described under this section if the person is proceeding in a manner needed for safe operation.

"(3) Proceeding in a manner needed for safe operation includes but is not necessarily limited to:

"(a) Momentarily stopping to allow oncoming traffic to pass before making a right-hand or left-hand turn.

"(b) Momentarily stopping in preparation of, or moving at an extremely slow pace while, negotiating an exit from the road.

"(4) A person is not in violation of the offense described under this section if the person is proceeding as part of a funeral procession under the direction of a funeral escort vehicle or a funeral lead vehicle.

"(5) The offense described in this section, impeding traffic, is a Class D traffic violation."

[2] Under ORS 153.076(2), "[t]he state, municipality or political subdivision [has] the burden of proving the charged violation by a preponderance of the evidence."

motorcycle officer in the City of Beaverton's Traffic Safety Team, was traveling westbound in the right lane of a highway overpass, when he observed defendant's vehicle, a BMW, traveling on an exit ramp from the southbound highway. The BMW made a right turn off of the exit ramp and began traveling westbound down a road where there were two westbound lanes.

The BMW drew Kingsbury's attention because it "came to a stop, in the [right] lane of traffic, with its left blinker on." Kingsbury continued to focus on the BMW "because it wasn't proceeding down the road like it * * * should[;] it was stopped with its blinker on."[3] The BMW had stopped in the right lane and was attempting to move into the left lane. However, the BMW could not "safely move into the left lane at that time" because there were two vehicles in the left lane, also proceeding westbound. As Kingsbury observed, the BMW then started to turn in front of the first vehicle that was proceeding in the left lane. That vehicle "had to kind of swerve and slow, because it appeared that this BMW was going to pull in front of it." The second vehicle in the left lane also slowed down before proceeding by. In addition, there was a third vehicle on the road—this one in the right lane behind the BMW—also heading westbound. The third vehicle also had to slow "because of the BMW that was stopped in the right lane and not proceeding."

Kingsbury subsequently pulled defendant over and asked why he had stopped in the road. Defendant told Kingsbury that "he was trying to get over so his son could go to the bathroom." Defendant told Kingsbury that it was an emergency, and Kingsbury told defendant "that that was not a valid emergency to stop in the flow of traffic." Kingsbury issued defendant a citation for impeding traffic.

At defendant's bench trial, defendant testified that he pulled off of the freeway so that his son could go to the bathroom, made a right turn onto the road, "and then put [his] left [turn] signal on" before "slowing down and waiting" for "two or three cars" to quickly go by on the left.

---

[3] The BMW "was stopped between intersections"—there was "no road for it to turn onto" and "no turn that could be made" at that location. In addition, there were "no hazards, no blockages, [and] no reason for the vehicle to come to a stop."

Defendant asked Kingsbury if defendant drove "conservatively" and "reasonably[,]" and Kingsbury replied, "No." Kingsbury testified that there were "other places of refuge on the right side of the road that the car could have pulled into to perform whatever task they were trying to perform." Kingsbury further testified, "Stopping in the middle of traffic is not safe."

During closing argument, defendant argued that a vehicle "slow down" for a short distance is not a violation of ORS 811.130. He pointed out that "there was only one car behind [him]" and argued that there was "no violation at all, because there's no blocking of the traffic, at all." Defendant also argued that he did not violate ORS 811.130 because the exception described in ORS 811.130(3)(b) applied in his situation: "[m]omentarily stopping in preparation of, or moving at an extremely slow pace while, negotiating an exit from the road." The municipal court found that defendant impeded traffic, and defendant now appeals.

On appeal,[4] defendant raises one assignment of error: "The court erred in convicting defendant of impeding traffic." To support that challenge, defendant states that the facts are "undisputed" and argues:

> "The city's evidence showed that defendant stopped only [momentarily] to allow two cars passing from the left lane and there was only one car behind defendant [that] was slowed down for a very short period [of] time to allow two cars to drive by on defendant's left. In order to support defendant's conviction, however, the evidence must show that defendant blocked or impeded the normal and reasonable flow of traffic."

Defendant relies on *State v. Tiffin*, 202 Or App 199, 206, 121 P3d 9 (2005), in which we held "that the trial court erred in concluding that the officers had probable cause to stop defendant for violating ORS 811.130."

As noted above, "[a] person commits the offense of impeding traffic if the person drives a motor vehicle * * * in a manner that impedes or blocks the normal and reasonable movement of traffic." ORS 811.130(1). However, the statute

---

[4] Respondent makes no appearance on appeal.

contains exceptions that permit a person to impede traffic for certain purposes. For example, a person is not in violation of the statute "if the person is proceeding in a manner needed for safe operation." ORS 811.130(2). "Proceeding in a manner needed for safe operation" includes "[m]omentarily stopping" as specified in ORS 811.130(3)(a) (to allow oncoming traffic to pass before turning) and (b) (in preparation for negotiating an exit from the road). Additionally, a person is not in violation of the statute if any impediment to the flow of traffic results from the person's participation in a funeral procession meeting specified criteria. ORS 811.130(4).

In *Tiffin*, we considered whether officers had probable cause to stop defendant for violating ORS 811.130. 202 Or App at 206. We first stated the undisputed facts:

"Just before midnight on January 31, 2002, two police officers, Justema and Selig, were driving along Monument Drive in Josephine County, which is a two-lane road that has a posted speed limit of 40 miles per hour. The officers drove up behind defendant, who was driving his car between 28 and 30 miles per hour. There was no ice on the roads and it was not raining or snowing, although Justema testified that there may have been some mist or drizzle. The officers followed defendant's vehicle for approximately one mile. During that time, there were no other cars on the road. Along that mile of road, there were several turnouts that defendant could have pulled into to allow the officers to pass. Defendant did not do so. Also, along that part of the road, there was either a passing lane or a passing zone where the officers could have safely passed defendant. Justema testified that he could have passed defendant but chose not to do so because, at that point, the officers wanted to continue to follow defendant. After about a mile, defendant turned onto Timber Road. At that time, the officers activated the overhead lights on their vehicle and stopped defendant. When Justema approached defendant's vehicle to speak with him, Justema smelled the odor of alcohol coming from defendant. Based on evidence gathered as a result of the stop, defendant was arrested for and subsequently convicted of driving under the influence of intoxicants."

*Id.* at 201. We agreed with the defendant that those facts did not support a legal conclusion that the defendant blocked or impeded the normal and reasonable movement of traffic

under ORS 811.130. *Id.* at 205. We also agreed with the defendant that the officers were "not impeded or blocked" by the defendant because "they could have safely and lawfully passed him but chose not to." *Id.* We also noted that the defendant's "speed was not significantly below the speed limit, there were no other cars on the road, and, if the officers' vehicle was blocked at all, it was for a very short distance[.]" *Id.* at 206.

Applying *Tiffin* to the facts of this case and viewing the evidence in the light most favorable to the state, we conclude that a rational trier of fact could have found that the essential elements of ORS 811.130 had been proved by a preponderance of the evidence. First, unlike the situation in *Tiffin*, where it was just before midnight and "there were no other cars on the road," here, it was approximately 3:00 in the afternoon and there were at least four other vehicles on the road in the westbound lanes (including Kingsbury's motorcycle). *Id.* at 206. Second, unlike the defendant in *Tiffin*, who was traveling under the posted speed limit, here, there is evidence that defendant brought his vehicle to a complete stop in the right lane of moving traffic. Third, and perhaps most significantly, there is evidence that, when defendant brought his vehicle to a complete stop in the right lane of traffic, he altered the normal movement of traffic. According to that evidence, defendant started to turn in front of the first vehicle that was proceeding westbound in the left lane, and that vehicle "had to kind of swerve and slow, because it appeared that this BMW was going to pull in front of it." The second vehicle in the left lane was also forced to slow, as was the vehicle behind defendant in the right lane. Because defendant caused other vehicles to slow and one vehicle to swerve, a rational trier of fact could have found that the essential elements of ORS 811.130—that is, that defendant, while driving a motor vehicle, impeded or blocked the normal and reasonable movement of traffic— had been proved by a preponderance of the evidence.

In reaching that conclusion, we reject defendant's argument that one of the exceptions described in ORS 811.130(2) and (3) for persons "proceeding in a manner needed for safe operation" applies to his conduct as a matter of law. The exceptions described in ORS 811.130(2) to (4)

are "plainly set out as [] exception[s] that stand[] apart from the description of the elements of [the] offense" that are specified in ORS 811.130(1). *State v. Boly*, 210 Or App 132, 135, 149 P3d 1237 (2006). Consequently, "the state [was] not required to negate the exception; rather, the exception constitutes an affirmative defense, which the defendant must establish to prevail." *Id.* In other words, defendant bore the burden of proving his claimed exception.

Here, the record does not compel the finding that defendant was "proceeding in a manner needed for safe operation." ORS 811.130(2), (3). For one, the record does not indicate precisely how long defendant impeded traffic, making it unclear whether defendant's impediment of traffic was a "momentary" one contemplated by the statute. More to the point, however, Kingsbury testified that defendant started to turn in front of the first vehicle that was proceeding in the left lane and that that vehicle had to swerve and slow to avoid hitting defendant. He also testified that he did not agree that defendant drove "conservatively" or "reasonably," instead emphasizing that, in this case, "[s]topping in the middle of traffic [was] not safe." Under those circumstances, a rational trier of fact could conclude, as the municipal court did, that defendant failed to prove his claimed exception.

Affirmed.