DeVORE, J.
*79 Defendant is a farmer who, like other Oregonians, is willing to examine the authority for issuing him a traffic ticket. The question is whether, when ticketed, defendant had been operating a "farm tractor" that was drawing a "farm trailer" or, instead, defendant had been driving a pickup truck pulling a trailer without lights in violation of ORS 816.330. Defendant appeals from a judgment that convicted him of that violation, arguing that his pickup and trailer should qualify as a "farm tractor" and "farm trailer," which require no such lights. We affirm.
Our standard of review is the same for appeals from judgments involving violations as for those involving misdemeanors or felonies. ORS 138.057(1)(a). On a question of sufficiency of the evidence, we review the facts "in the light most favorable to the state to determine whether any rational trier of fact could have found that the essential elements of the violation had been proved by a preponderance of the evidence." State v. Chen , 266 Or. App. 683, 684, 338 P.3d 795 (2014) (citation omitted). On a question of law, we review for legal error. See State v. Rosling , 288 Or. App. 357, 360, 406 P.3d 184 (2017), rev. den. , 362 Or. 389, 411 P.3d 387 (2018) (interpretation of statute).
On a September evening in 2017, defendant drove a 1994 Chevrolet C2500 pickup truck on Highway 101, pulling a single-axle flatbed trailer without lights. A state trooper stopped him, explaining that the trailer needed lights and citing him for a violation of ORS 816.330. At trial, the trooper testified that the trailer was a flatbed utility trailer that appeared to be fashioned from the frame of a travel trailer with the addition of boards for a bed. Defendant argued that his trailer was exempt from the lighting requirement because it was a farm trailer. He testified that he used the trailer on his farm to haul things like irrigation supplies, livestock feed, and chicken coops. Defendant explained that he was moving irrigation equipment and structural material to a new location on the evening in question. The trial court convicted defendant of the violation and imposed a fine of $ 80.
*80 Defendant appeals, renewing his argument that the trailer was a "farm trailer" and exempt from the lighting requirements *250 of ORS 816.330. ORS 816.340(3)(c) ; ORS 801.270. In relevant part, ORS 816.330(1) provides that a "person commits the offense of operation without required lighting equipment if the person *** [d]rives or moves on any highway any vehicle that is not equipped with lighting equipment that is required[.]" In particular, ORS 816.320(2) requires trailers to be equipped with two taillights, registration plate lights, brake lights, turn signals, and two rear reflectors. However, ORS 816.330(2) exempts vehicles listed in ORS 816.340, which lists as exempt: "[f]arm tractors, implements of husbandry and farm trailers." ORS 816.340(3)(c). Those terms are defined in turn.
Under ORS 801.270, a "farm trailer" is a vehicle that
"(1) Is without motive power;
"(2) Is a vehicle other than an implement of husbandry;
"(3) Is designed to carry property; and
"(4) Is drawn by a farm tractor. "
(Emphases added.) Under ORS 801.265, a "farm tractor" is "a motor vehicle designed and used primarily in agricultural operations for drawing or operating other farm machines, equipment and implements of husbandry." (Emphasis added.)
Defendant and the state disagree whether the trailer constituted a "farm trailer" such that it would be exempt from the light requirements. The state contends that the trailer failed to meet the fourth element of the definition of a "farm trailer," that it be "drawn by a farm tractor." Thus, the question presented is not so much about the meaning of "farm trailer" as it is about the meaning of "farm tractor." The state contends that defendant's pickup truck is not a "farm tractor." Referring to the last words in the definition of a "farm tractor," defendant argues that his pickup truck was "used primarily in agricultural operations." The state argues that a "farm tractor" must also be "designed" for drawing other farm equipment.
*81 The disagreement is a question of statutory construction. We must determine what the legislature intended by the phrase "designed and used primarily in agricultural operations." When determining the meaning of the statute, we emphasize a statute's text and context. See State v. Gaines , 346 Or. 160, 171-73, 206 P.3d 1042 (2009) (outlining the methodology). In this case, the text is critical. In the definition of "farm tractor" at ORS 801.265, the terms are joined by the conjunction "and." That grammatical structure requires that a vehicle must be both "used" and "designed" for farm operations in order to be a "farm tractor." See State v. English , 269 Or. App. 395, 399, 343 P.3d 1286 (2015) (relying on the "grammatical structure" of the statute in dispute); Drain v. Clackamas County , 22 Or. App. 332, 338-39, 539 P.2d 673 (1975) (noting that the use of the word "and" rather than "or" indicated that both conditions were necessary to invoke the application of a statutory provision).
The statute's history is consistent with the understanding that, to be a "farm tractor," the vehicle must also be primarily designed for use in agriculture to pull farm equipment. See State v. Ziska/Garza , 355 Or. 799, 806, 334 P.3d 964 (2014) ("Analysis of the context of a statute may include prior versions of the statute[.]"). The legislature enacted the current version of the law in 1983, when it reorganized the entire motor vehicle code. See Or. Laws 1983, ch 338. At that time, the legislature made "no substantive changes" to any provisions. State v. Suppah , 358 Or. 565, 575 n. 8, 369 P.3d 1108 (2016) (citing Staff Measure Analysis, Senate Transportation and Tourism Committee, HB 2031, May 23, 1983). ORS 801.265 is but a newer iteration of its predecessor, former ORS 481.015 (1981), repealed by Or. Laws 1983, ch 338, § 978. Exhibit C, Advisory Committee on Motor Vehicle Law Revision, House Interim Committee on Transportation, HB 2031, July 15, 1982 (accompanying statement of legislative counsel Bradd Swank). The former statute defined a "farm tractor" as a "vehicle designed primarily for use in agricultural operations for drawing or operating plows, mowing machines and other farm equipment or implements of husbandry." Former ORS 481.015 (1981) (emphasis added). That definition, which is similar to the current definition, included "designed primarily" as a *82 necessary element. Under both the current *251 and former versions of the statute, for a vehicle to be a "farm tractor," it must be designed primarily for agricultural operations to pull farm equipment.
To understand the meaning of "farm tractor," we may employ a dictionary to help ascertain the common meaning of the words "designed" and "primarily." See State v. Murray , 340 Or. 599, 604, 136 P.3d 10 (2006) ("Absent a special definition, we ordinarily would resort to dictionary definitions, assuming that the legislature meant to use a word of common usage in its ordinary sense." (Citation omitted.)). The word "designed" is the past participle of the verb "design," used here in a passive construction. In this form, it refers to something having been created for a specific intended purpose. That is, "design" in this usage is defined as "to plan or produce with special intentional adaption to a specific end[.]" Webster's Third New Int'l Dictionary 611 (unabridged ed. 2002).[1] And, "primarily" indicates "first of all : fundamentally, principally." Id. at 1800.
The purpose for which a "farm tractor" must be designed is "drawing or operating other farm machines, equipment and implements of husbandry. " ORS 801.265 (emphasis added). That concluding language means that it is not enough that the vehicle is capable of pulling farm machines. It must be designed and used primarily for that function, i.e. , that must be its principal, intended purpose. Incidentally, a "farm tractor," like a "farm trailer," is exempted from the requirements of lighting for ordinary vehicles designed for highway travel. See ORS 816.340(3)(c) (exempting farm tractors, implements of husbandry, and farm trailers).
Defendant was not cited for the absence of conventional lighting or signals on his pickup. Presumably, his 1994 Chevrolet C2500 pickup was fully equipped for highway travel. In response to defendant's suggestion that it was a "farm tractor," the state trooper countered, "That truck is a passenger vehicle, Your Honor." No doubt, as a pickup *83 truck, it was capable of many uses on a farm and presumably capable of pulling some farm equipment. The pickup may well be a multipurpose motor vehicle designed to carry both passengers and cargo, and it may be equally capable of travel across farm land as high-speed travel on interstate highways. However, that does not mean it was "designed and used primarily in agricultural operations for drawing *** farm machines, equipment and implements of husbandry."
As a factual matter, there was sufficient evidence to conclude that the primary purpose and design of defendant's pickup truck was not to pull farm machinery. As a legal matter, the trial court did not err in construing and applying the statutes when determining that defendant's pickup was not a "farm tractor," and, because defendant's trailer was not "drawn by a farm tractor," the trailer was not a "farm trailer." Contrary to defendant's argument, the trailer was required to have lights. See ORS 816.320(2) (articulating those standards).
Accordingly, the trial court did not err in determining that the exemption did not apply and concluding that defendant was in violation of ORS 816.330 for pulling his trailer on the highway without required lights.
Affirmed.

See also State v. James , 266 Or. App. 660, 667 n. 3, 338 P.3d 782 (2014) ("[W]e note that Webster's Third New Int'l Dictionary (unabridged ed. 2002) can be considered to be a 'contemporaneous' source for statutes dating back to 1961 (if not earlier).").