TOOKEY, J.
*284 *568 Defendant appeals a judgment of conviction for furnishing alcohol to a person under 21 years of age and first-degree rape, raising nine assignments of error. We reject defendant's second through eighth assignments of error without discussion. In defendant's first assignment of error, defendant argues that the "trial court erred when it permitted defendant to be tried on the indictment to which it had allowed a demurrer." In his ninth assignment of error, defendant contends that the "trial court erred when it denied defendant's eligibility for sentence modification programs on Count 2." We conclude that defendant failed to object to being tried on the indictment after the trial court allowed his demurrer only as to Count 4 and, therefore, defendant did not preserve that argument. We further conclude that the trial court erred in denying defendant's eligibility for sentence modification programs for the entire period of defendant's 120-month sentence on Count 2. Accordingly, we remand for resentencing and otherwise affirm.
I. BACKGROUND
The pertinent facts are mostly procedural and, for our purposes, undisputed.[1] Defendant was indicted on one count of furnishing alcohol to a person under 21 years of age, ORS 471.410 (Count 1), one count of first-degree rape, ORS 163.375 (Count 2), one count of second-degree sexual abuse, ORS 163.425 (Count 3), and one count of failing to report as a sex offender, ORS 163A.040 (Count 4). Defendant filed a demurrer to the indictment, arguing that the state had failed to allege the basis for joining multiple counts in one indictment in the language of the joinder statute. Defendant contended that " ORS 135.630 requires dismissal of an accusatory instrument 'when it appears on the face thereof' that the instrument fails to comply with ORS 132.560," and because "the indictment does not expressly allege that the joined offenses were either (1) of the same or similar character, (2) based on the same act or transaction, or (3) based on *569 two or more acts or transactions connected together or constituting parts of a common scheme or plan," the "indictment is subject to dismissal." (Boldface in defendant's demurrer.)[2] In the state's objection to defendant's demurrer, *285 the state contended that "[t]here is no requirement [that] the state and the grand jury utilize the language the defendant suggests is necessary."
At the hearing on defendant's demurrer, defendant reiterated his argument that the language of the joinder statute is "required to be pled in the indictment" and "there's no joinder language whatsoever in the indictment." Defendant contended that "there's no allegation that * * * the failure to register [and] the other new sex offenses are related by any common scheme or plan or part of the same criminal episode in any way or are the same or similar crimes." The state contended that defendant's demurrer turned on whether the court could conclude from the allegations that all of the "conduct is * * * occurring during the same act and transaction." The trial court noted that the first three counts appeared to have occurred during the same act or transaction because they were alleged to have occurred in the same place on December 29, 2014, and all involved the same *570 victim. Defendant acknowledged that those counts are "certainly more related in time and circumstances," but argued that Count 4, for failing to report as a sex offender, was "not similar whatsoever" because it did not involve the same victim "and the time is completely different." Defendant then stated that, because "these are improperly joined charges," the "remedy is dismissal of the indictment."
After taking the matter under advisement, the trial court issued a written opinion and order. The trial court agreed with the state that it need not expressly plead that the charges were part of the same act or transaction and proceeded to determine "whether the four charges in the indictment appear to arise from the same act or transaction." The trial court concluded that Counts 1, 2, and 3, for furnishing alcohol to a minor, first-degree rape, and second-degree sexual abuse, were "properly joined together" as part of the same act or transaction because "[a]ll three incidents are alleged to have been committed by the same defendant against the same victim on [December 29, 2014,] in this county." Turning to Count 4, the trial court concluded that defendant's alleged failure to report as a sex offender did not appear to be part of the same act or transaction because it "can be proven without any reference to December 29, 2014, the alleged victim, or the crimes alleged in Counts 1, 2, and 3." Because the court could not determine from the face of the indictment that Count 4 was properly joined, it allowed defendant's demurrer "as to Count 4," allowed "[t]he state *** to refile within 30 days," and ordered defendant to "prepare the necessary judgment."
The state reindicted defendant for failing to report as a sex offender, and he was convicted of charges stemming from the conduct underlying Count 4 in another case. Additionally, at some point before his trial, defendant prepared a judgment dismissing Count 4 and, when the trial court asked defendant whether "there [is] any further status on" Judge Zennaché's ruling that allowed defendant's demurrer on Count 4, defendant agreed with the state that Count 4 "should be ignored by the court" and did not object to being tried on the remaining charges in the indictment. Following a jury trial, defendant was found guilty of *571 furnishing alcohol to a minor, ORS 471.410 (Count 1), first-degree rape, ORS 163.375 (Count 2), and second-degree sexual abuse, ORS 163.425 (Count 3).
At defendant's sentencing hearing, the trial court noted that it had received defendant's proposed judgment of dismissal for Count 4 and that "[w]e discussed Count 4 at the beginning of this case and * * * when we discussed that Judge Zennaché granted the defendant's demurrer to that count * * * it was then reported to me that it's been dealt with." The court then proceeded to impose sentences on the remaining counts. The trial court merged the guilty verdict on Count 3, for second-degree sexual abuse, into the guilty verdict on Count 2, for first-degree rape. On Count 2, the trial court sentenced defendant to serve a 120-month sentence pursuant to the Oregon Sentencing Guidelines and made 100 months of that sentence a determinate sentence pursuant to *286 ORS 137.700.[3] As to Count 1, for furnishing alcohol to a minor, the trial court sentenced defendant to a 10-day jail term to be served concurrently with his sentence on Count 2.
The state objected to defendant receiving anything less than a 120-month determinate sentence. The state contended that, under ORS 137.700, "the language saying that the sentence should not be subject to reduction" means "that whatever the sentence is [defendant] is not eligible for earned time reductions, and if the sentence is higher than the mandatory minimum, nothing in that statutory scheme is meant to reduce the sentence." Defendant contended that, "the court has discretion under the statutes to allow good time on any amount over the Measure 11 time." The trial court agreed with the state and ruled that "[t]he sentence will be 120 months without any reduction of good time or other alternative sanctions or any reduction whatsoever."
*572 II. ANALYSIS
A. Defendant's Demurrer to the Indictment
On appeal, in his first assignment of error, defendant argues that the "trial court erred when it permitted defendant to be tried on the indictment to which it had allowed a demurrer." Defendant does not contest the trial court's conclusion that Counts 1, 2, and 3 were properly joined as part of the same act or transaction, but he contends that ORS 135.660 and ORS 135.670(1) required the trial court to dismiss the entire indictment, instead of only allowing defendant's demurrer on Count 4.[4] The state argues that defendant "did not preserve a challenge to his trial on the charges that remained after the court" allowed defendant's demurrer on Count 4 because "[d]efendant did not object to the court's partial grant of the demurrer," he failed to "prepare a judgment (or order) that would memorialize a dismissal of the indictment," and "he did not object to being tried on the indictment containing the remaining three charges."
"Generally, an issue not preserved in the trial court will not be considered on appeal." State v. Wyatt , 331 Or. 335, 341, 15 P.3d 22 (2000).
"The purpose of the preservation rule is the practical one of requiring a defendant to provide an explanation of his or her position specific enough to ensure that the trial court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted."
State v. Amaya , 336 Or. 616, 629, 89 P.3d 1163 (2004) (citation, internal quotation marks, and brackets omitted). Because "the preservation rule is a practical one, * * * close calls * * * inevitably will turn on whether, given the particular record of a case, the court concludes that the policies underlying *573 the rule have been sufficiently served." State v. Parkins , 346 Or. 333, 341, 211 P.3d 262 (2009). With respect to defendant's first assignment of error, on this particular record, we conclude that the policies underlying the preservation rule were not sufficiently served.
First, although defendant stated that the "remedy is dismissal of the indictment," he made that statement in the context of his argument that none of the charges were properly joined because ORS 132.560 required *287 the state to expressly allege that all of the charges were "[b]ased on the same act or transaction." ORS 132.560(1)(b)(B). Thus, the issue raised by defendant was whether the indictment was fatally flawed because the state failed to allege the basis for joinder in the language of the joinder statute. Here, everyone-the parties and the trial court-understood that the issue was whether the charges were properly joined as part of the same act or transaction pursuant to ORS 132.560(1)(b)(B). Defendant did not argue, as he does on appeal, that ORS 135.660 and ORS 135.670(1) required the trial court to dismiss the entire indictment even if only one charge was not properly joined. Under the circumstances, defendant's argument that none of the charges were properly joined because they were not expressly alleged to be part of the same act or transaction pursuant to ORS 135.630 and ORS 132.560, did not fairly apprise the trial court that he sought a ruling on whether ORS 135.660 and ORS 135.670(1) required the trial court to dismiss the entire indictment even if it determined that some of the charges were properly joined, nor was the state given an opportunity to respond to that legal question. See State v. Solomon , 133 Or. App. 184, 187, 890 P.2d 433, rev. den. , 321 Or. 512, 900 P.2d 509 (1995) ("Although there are distinctions between preserving issues, identifying sources, and making arguments, * * * those distinctions do not absolve a party from alerting a trial court that an error exists." (Citation omitted.) ). Defendant's arguments at trial were qualitatively different than those he now makes and did not articulate the theory that he now advances on appeal, and it is evident from the state's arguments and the trial court's letter opinion that defendant's demurrer and oral arguments below did not alert the state or the trial court to the issue that he raises on appeal. *574 Second, defendant had ample opportunity to secure a ruling on the trial court's disposition on the demurrer and to alert the trial court regarding the contention that he raises on appeal, viz. -that the trial court erred in allowing defendant's demurrer only as to Count 4. The trial court issued its written opinion and order five months before defendant's trial, and defendant never objected to the trial court's disposition allowing defendant's demurrer to Count 4 or asked the court to clarify its ruling to determine whether that ruling required the dismissal of the entire indictment. See McDougal v. Griffith , 156 Or. App. 83, 87-88, 964 P.2d 1135 (1998), rev. den. , 328 Or. 330, 987 P.2d 508 (1999) (when trial court indicated intended disposition of damages in a letter opinion sent to the parties one month before entry of judgment, and plaintiff did not raise objections to that disposition, the plaintiff failed to preserve objections for appeal). Instead of objecting to the court's disposition or preparing a judgment that dismissed the entire indictment, defendant prepared a judgment dismissing Count 4. Additionally, when the trial court asked defendant on the first day of trial whether "there [is] any further status on that," defendant agreed with the state that Count 4 "should be ignored by the court" and did not object to being tried on the indictment containing the remaining three charges. Furthermore, at defendant's sentencing hearing, the trial court noted that it had received defendant's proposed judgment of dismissal for Count 4 and that "[w]e discussed Count 4 at the beginning of this case and * * * when we discussed that Judge Zennaché granted the defendant's demurrer to that count * * * it was then reported to me that it's been dealt with."See State v. Chesnut , 283 Or. App. 347, 350-52, 388 P.3d 1237 (2017) (declining to exercise discretion to correct plain error in a judgment when the defendant was consulted about the form of the judgment and was given the opportunity to raise any concerns); State v. Kammeyer , 226 Or. App. 210, 214, 203 P.3d 274, rev. den. , 346 Or. 590, 214 P.3d 822 (2009) (holding that the defendant was precluded from seeking reversal on a specific error because, although the defendant did not "urge or advise" the trial court to commit the asserted error, he nevertheless was "actively instrumental" in causing that error because he did not oppose the erroneous action and, instead, indicated his willingness to accept the outcome of that action). *575 Because the issue that defendant now raises on appeal was not presented in a way that afforded the state and the trial court a *288 fair opportunity to address it, we conclude that the issue is not preserved. Furthermore, when the trial court asked defendant whether there was "any further status" on the demurrer, defendant indicated his willingness to be tried on the remaining charges in the indictment thereby inviting the trial court to proceed to trial. Thus, defendant not only failed to preserve the issue for appeal, but he also invited any error.[5]
B. Defendant's Eligibility for Sentence Modification Programs
We turn to defendant's ninth assignment of error. In his ninth assignment, defendant argues that the trial court "erred when it relied on ORS 137.700 to require defendant to serve the entirety of his 120-month sentence as a determinate sentence" because, in this case, " ORS 137.700 requires [only] that defendant serve 100 months of that sentence as a determinate sentence." Defendant contends that, for the remaining 20 months of that sentence, "[t]he court may deny eligibility [for sentence modification programs] only after finding substantial and compelling reasons to deny eligibility on the record."[6] The state responds that "[d]efendant did not preserve his current argument that the court was required to make findings of substantial and compelling reasons for denial of eligibility for those programs."
Here, we conclude that the policies underlying the preservation rule were sufficiently served. As noted, on Count 2, the trial court initially sentenced defendant to serve a 120-month sentence pursuant to the Oregon Sentencing Guidelines and made 100 months of that sentence a determinate sentence pursuant to ORS 137.700. Hence, defendant would have been eligible for sentence modification programs during the final 20 months of his sentence.
*576 The state objected to that sentence, contending that ORS 137.700 required the court to deny defendant eligibility for any reduction in his sentence whatsoever. Defendant argued that "the court has discretion under the statutes to allow good time on any amount over the Measure 11 time." In light of the state's argument and the statutory scheme outlined below, defendant's argument that "the court has discretion under the statutes to allow good time," was the type of short-hand reference that alerted the trial court that defendant disagreed with the state as to how the discretionary sentence modification statutes operate with respect to the mandatory Measure 11 sentences. See State v. Walker , 350 Or. 540, 550, 258 P.3d 1228 (2011) (discussing preservation, and stating that in "criminal cases, in which there is a premium on considerations of cost and speed, the realities of trial practice may be such that fairly abbreviated short-hand references suffice to put all on notice about the nature of a party's arguments"). Additionally, whether the trial court was required to find substantial and compelling reasons to deny defendant eligibility for sentence modification programs is an issue of statutory interpretation that was fairly encompassed within defendant's objection to the broader legal issue. See Stull v. Hoke , 326 Or. 72, 76-77, 948 P.2d 722 (1997) ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties."); State v. Garner , 253 Or. App. 64, 69, 289 P.3d 351 (2012), rev. den. , 353 Or. 280, 298 P.3d 30 (2013) ("[W]hen the operation of a statute is unavoidably, directly implicated, we are required to interpret the statute correctly.").
We therefore turn to the merits of this dispute. To determine how the sentence modification statutes operate with respect to Measure 11 sentences, we apply the familiar statutory interpretation methodology set out in PGE v. Bureau of Labor and Industries , 317 Or. 606, 610-12, 859 P.2d 1143 (1993), as later modified by State v. Gaines , 346 Or. 160, 171-73, 206 P.3d 1042 (2009). "In interpreting statutes, we seek to determine the legislature's intention, by reviewing the statutory text and context, and, if the court *289 concludes that it appears useful to the analysis, the legislative history." TriMet v. Amalgamated Transit Union Local 757 , 362 Or. 484, 493, 412 P.3d 162 (2018). Here, the inquiry is *577 whether ORS 137.700 precludes a defendant's eligibility for sentence reductions for any part of a sentence that exceeds the prescribed "mandatory minimum" sentence.
We start with the text of ORS 137.700 because it is "the best evidence of the legislature's intent." PGE , 317 Or. at 610, 859 P.2d 1143. ORS 137.700 provides, in pertinent part:
"(1) * * * [W]hen a person is convicted of one of the offenses listed in subsection (2)(a) of this section * * * the court shall impose, and the person shall serve, at least the entire term of imprisonment listed in subsection (2) of this section. The person is not, during the service of the term of imprisonment, eligible for release on post-prison supervision or any form of temporary leave from custody. The person is not eligible for any reduction in, or based on, the minimum sentence for any reason whatsoever under ORS 421.121 or any other statute. The court may impose a greater sentence if otherwise permitted by law, but may not impose a lower sentence than the sentence specified in subsection (2) of this section.
"(2) The offenses to which subsection (1) of this section applies and the applicable mandatory minimum sentences are:
" * * * * *
"[ (a) ](J) Rape in the first degree, as defined in ORS 163.375(1)(a), (c) or (d) * * * 100 months."
Thus, ORS 137.700"prescribes mandatory minimum sentences for certain felony offenses" and "expressly states that its minimum sentences may not be reduced for any reason." State v. Langdon , 330 Or. 72, 76-77, 999 P.2d 1127 (2000) (emphasis added).
The first sentence of ORS 137.700 provides that a defendant shall "serve at least the entire term of imprisonment listed in subsection (2)," and the second sentence provides that during the "service of the term of imprisonment ," the defendant "is not * * * eligible for release on post-prison supervision or any form of temporary leave from custody." ORS 137.700(1) (emphases added). We assume that the phrase "term of imprisonment," is used consistently throughout ORS 137.700(1) and refers to the minimum term of imprisonment that a defendant must serve pursuant *578 to subsection (2). See Pete's Mountain Homeowners v. Ore. Water Resources , 236 Or. App. 507, 518, 238 P.3d 395 (2010) ("It is a longstanding principle of statutory construction that words may be assumed to be used consistently throughout a statute."). Therefore, a defendant must serve "at least the entire term of imprisonment listed in subsection (2)" and is not eligible for release on post-prison supervision or any form of temporary leave from custody during the service of that term of imprisonment.
Additionally, the third sentence of ORS 137.700 provides that a defendant "is not eligible for any reduction in, or based on, the minimum sentence for any reason whatsoever under ORS 421.121 or any other statute." ORS 137.700(1) (emphasis added). We also assume that the phrase "minimum sentence" is used consistently throughout ORS 137.700, and refers to the "mandatory minimum sentences" listed in ORS 137.700(2). Hence, a defendant may not receive a reduction in, or based on, the "mandatory minimum sentences" listed in ORS 137.700(2). Thus, in this case, ORS 137.700 only precludes defendant's eligibility for a reduction in his 100-month mandatory minimum sentence.
Finally, the fourth sentence of ORS 137.700 also refers to the minimum sentences in subsection (2) and provides that "[t]he court may impose a greater sentence if otherwise permitted by law, but may not impose a lower sentence than the sentence specified in subsection (2) of this section." If the legislature intended to preclude a defendant's eligibility for sentence reductions for a greater sentence than the mandatory minimum sentences in subsection (2), it could have extended the restrictions discussed above to those greater sentences. Therefore, by its terms, ORS 137.700 does not preclude a defendant's eligibility for sentence reductions under ORS 421.121, or any other statute, for any part of a sentence that exceeds the "mandatory minimum" sentence, i.e. , the determinate term of *290 imprisonment that a defendant must serve pursuant to subsection (2).
In this case, the statutes relevant to defendant receiving a reduction in his sentence are ORS 421.121 and ORS 137.750. ORS 421.121 provides, in pertinent part:
*579 "(1) Except as provided in ORS * * * 137.700, * * * each inmate sentenced to the custody of the Department of Corrections for felonies committed on or after November 1, 1989, is eligible for a reduction in the term of incarceration for:
"(a) Appropriate institutional behavior, as defined by rule of the Department of Corrections; and
"(b) Participation in the adult basic skills development program described in ORS 421.084."
In State v. Berger , 284 Or. App. 156, 161, 392 P.3d 792 (2017), we explained "that a reduction in the term of incarceration under ORS 421.121 for 'earned time' is a sentence modification program that the sentencing court may make a defendant ineligible for pursuant to ORS 137.750." ORS 137.750(1) provides:
"When a court sentences a defendant to a term of incarceration upon conviction of a crime, the court shall order on the record in open court as part of the sentence imposed that the defendant may be considered by the executing or releasing authority for any form of temporary leave from custody, reduction in sentence, work release or program of conditional or supervised release authorized by law for which the defendant is otherwise eligible at the time of sentencing, unless the court finds on the record in open court substantial and compelling reasons to order that the defendant not be considered for such leave, release or program."
Because ORS 137.700 does not preclude a defendant's eligibility for sentence reductions under ORS 421.121 or any other statute for any part of a sentence that exceeds the "mandatory minimum" sentence, a defendant is presumed eligible for such a reduction unless the trial court exercises its discretion and finds substantial and compelling reasons to deny a defendant sentence reductions under ORS 137.750.
The context of ORS 137.700 and its legislative history also supports our conclusion that, subject to the sentencing court's discretion under ORS 137.750, a defendant who receives a sentence above the mandatory minimum sentence is eligible for sentence reductions "under ORS 421.121 or any other statute," on the portion of the sentence that exceeds the mandatory minimum sentence. ORS 137.700(1).
*580 As originally enacted, ORS 137.700(1) provided that a defendant "is not eligible for any reduction in the sentence for any reason whatsoever under ORS * * * 421.121 or any other statute." Or. Laws 1995, ch. 2, § 1. See State v. Spainhower , 251 Or. App. 25, 28, 283 P.3d 361 (2012) (context includes prior versions of the statute). Thus, as enacted, the language of ORS 137.700 would appear to bolster the state's argument "that whatever the sentence is [defendant] is not eligible for earned time reductions."
However, the pertinent text of ORS 137.700 was amended in 1997. In January 1997, House Bill (HB) 2233 (1997) was introduced to provide certain exceptions to the mandatory minimum sentences under ORS 137.700. Then, approximately six months later, the House Judiciary Committee held a public hearing on HB 2233 to consider the proposed "dash 14 amendments." House Committee on Judiciary, HB 2233, Jun. 12, 1997. At that hearing, Mark Gardner, Special Counsel to Attorney General Hardy Myers, testified in support of the "dash 14 amendments" to HB 2233. Tape Recording, House Committee on Judiciary, HB 2233, Jun. 12, 1997, Tape 55, Side B (statements of Mark Gardner). Gardner explained that the proposed "dash 14 amendments" were the product of a work group convened by the Department of Justice that included the Oregon District Attorneys Association, the Citizens Crime Commission, Crime Victims United, and the Oregon Criminal Defense Lawyers Association, and that the amendments represented a "finely crafted compromise." Exhibit K, House Committee on Judiciary, HB 2233, Jun. 12, 1997 (accompanying testimony of Mark Gardner). See Kohring v. Ballard , 355 Or. 297, 311-12, 325 P.3d 717 (2014) ("[I]t is appropriate to give greater weight" to statements of nonlegislators "when the nonlegislators were the drafters and principal *291 proponents of a bill, and it is clear that the legislature relied on their explanations."). Section 2 of the proposed "dash 14 amendments" amended ORS 137.700(1) with the following emphasized language to provide, in pertinent part, "The person is not eligible for any reduction in, or based on , the minimum sentence for any reason whatsoever under ORS * * * 421.121 or any other statute." Exhibit L, House Committee on Judiciary, HB 2233, Jun. 12, 1997 (accompanying testimony of Mark *581 Gardner) (emphases added). With respect to the addition of that emphasized language, Gardner explained that "[t]he bill provides that persons who receive sentences above the mandatory minimum will receive good time on only that portion that is above the minimum sentence." Exhibit K, House Committee on Judiciary, HB 2233, Jun. 12, 1997 (accompanying testimony of Mark Gardner). At a work session that same day, the House Committee on Judiciary voted to adopt the "dash 14 amendments" to HB 2233 and inserted the amended text of HB 2233 into another bill, Senate Bill (SB) 1049 (1997), in a practice colloquially known as "gutting and stuffing." Tape Recording, House Committee on Judiciary, HB 2233, Jun. 12, 1997, Tape 56, Side B (statements of Rep. John Minnis). The Senate concurred in the House amendments to SB 1049 and Governor Kitzhaber signed the bill into law. That preceding legislative history supports our conclusion that defendants who receive sentences above the mandatory minimum sentences under ORS 137.700 are eligible to receive reductions on any portion of the sentence that is above the minimum sentence. Therefore, the trial court erred when it concluded that ORS 137.700 required it to deny defendant eligibility for any reduction in the 20 months of defendant's sentence that exceeded the mandatory minimum sentence.
III. CONCLUSION
To summarize, with respect to defendant's first assignment of error, because defendant failed to object to being tried on the indictment after the trial court allowed his demurrer only as to Count 4, and because the issue that defendant now raises on appeal was not presented in a way that afforded the state and the trial court a fair opportunity to address it, defendant did not preserve that argument. Furthermore, because defendant indicated his willingness to be tried on the remaining charges in the indictment, he invited any error. With respect to defendant's ninth assignment of error, ORS 137.700(1) provides that a defendant "is not eligible for any reduction in, or based on, the minimum sentence for any reason whatsoever under ORS 421.121 or any other statute." The text of ORS 137.700(1) does not preclude a defendant's eligibility for sentence reductions under *582 ORS 421.121 or any other statute for any part of a sentence that exceeds the "mandatory minimum" sentence. The context and legislative history confirm that "persons who receive sentences above the mandatory minimum will receive good time on only that portion that is above the minimum sentence." Exhibit K, House Committee on Judiciary, HB 2233, Jun. 12, 1997 (accompanying testimony of Mark Gardner). In this case, the trial court sentenced defendant to serve a 120-month sentence pursuant to the Oregon Sentencing Guidelines and only 100 months of that sentence were a determinate sentence pursuant to ORS 137.700. The trial court erred when it concluded that ORS 137.700 required it to deny defendant eligibility for any reduction in the remaining 20 months of defendant's sentence that exceeded the mandatory minimum sentence. We therefore remand for resentencing so the trial court can consider whether "substantial and compelling" reasons justify denying defendant's eligibility for sentence reductions for the 20 months of defendant's sentence that exceed the mandatory minimum sentence. ORS 137.750.
Remanded for resentencing; otherwise affirmed.

The record shows that defendant appeared before five different judges at various stages of this case. The judge who presided over the pretrial hearing on defendant's demurrer was Judge Charles Zennaché. The judge who presided over defendant's trial and sentencing was Judge Curtis Conover.

ORS 135.630 provides, in part, that a "defendant may demur to the accusatory instrument when it appears on the face thereof" that "it does not substantially conform to the requirements of *** [ORS] 132.560."
ORS 132.560 provides, in pertinent part:
"(1) A charging instrument must charge but one offense, and in one form only, except that:
" * * * * *
"(b) Two or more offenses may be charged in the same charging instrument in a separate count for each offense if the offenses charged are alleged to have been committed by the same person or persons and are:
"(A) Of the same or similar character;
"(B) Based on the same act or transaction; or
"(C) Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan."
"The net effect of ORS 135.630 and ORS 132.560 is that an indictment must state the basis for the joinder of the crimes it charges, 'whether by alleging the basis for joinder in the language of the joinder statute or by alleging facts sufficient to establish compliance with the joinder statute.' " State v. Walsh , 288 Or. App. 331, 333, 406 P.3d 152 (2017) (quoting State v. Poston , 277 Or. App. 137, 144-45, 370 P.3d 904 (2016), adh'd to on recons. , 285 Or. App. 750, 399 P.3d 488, rev. den. , 361 Or. 886, 403 P.3d 761 (2017) ).

ORS 137.700 (Measure 11) requires the court to order a "mandatory minimum" sentence of 100 months for first-degree rape. In this case, the crime severity classification for first-degree rape on the crime seriousness scale is "10." OAR 213-017-0002. Defendant's criminal history classification was "B" on the criminal history scale. The presumptive sentence for "grid block" 10B on the Oregon Sentencing Guidelines Grid is 116 to 120 months. OAR 213-004-0001 ; see also Oregon Criminal Justice Commission, Oregon Sentencing Guidelines Grid (2018) available at www.oregon.gov/cjc/about/Documents/guidelinesgrid.pdf (accessed Oct. 23, 2018).

ORS 135.660 provides that "[u]pon considering the demurrer, the court shall give judgment, either allowing it or disallowing it, and an entry to that effect shall be made in the register." ORS 135.670(1) provides:
"If the demurrer is allowed, the judgment is final upon the accusatory instrument demurred to and is a bar to another action for the same crime unless the court, being of the opinion that the objection on which the demurrer is allowed may be avoided in a new accusatory instrument, allows the case to be resubmitted or refiled."

Defendant does not request plain-error review. See ORAP 5.45.

As discussed in more detail below, ORS 137.750 permits the sentencing court to deny the defendant eligibility for sentence modification programs if it "finds on the record in open court substantial and compelling reasons to order that the defendant not be considered for such leave, release or program." ORS 137.750(1).