Submitted December 6, 2018, reversed and remanded May 5, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSEPH MARTIN HUGHES, JR.,
*Defendant-Appellant.*

Multnomah County Circuit Court
16CR76675; A164857

488 P3d 795

Defendant appeals a judgment convicting him of misdemeanor driving while suspended or revoked, ORS 811.182. On appeal, defendant assigns error to the trial court's denial of his motion to suppress evidence obtained after defendant drove with a single dealer plate displayed on the rear of his car and an officer stopped him for failure to properly display registration plates, ORS 803.540. Defendant contends that the officer did not have probable cause to initiate a traffic stop. Specifically, defendant argues that the officer's subjective probable cause was not objectively reasonable, because dealer vehicles may lawfully display only a single plate. The state responds that defendant invited the error that he now challenges on appeal, because he argued to the trial court that the applicable standard for a traffic stop was reasonable suspicion; that is, he did not contend that the officer was required to have probable cause to make the stop. The state alternatively argues that the officer had probable cause to justify the traffic stop. *Held*: The trial court erred. The officer lacked probable cause to detain defendant when he initiated the traffic stop.

Reversed and remanded.

Leslie M. Roberts, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Sarah Laidlaw, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before DeHoog, Presiding Judge, and DeVore, Judge, and Aoyagi, Judge.

DeHOOG, P. J.

Reversed and remanded.

**DeHOOG, P. J.**

Defendant appeals a judgment convicting him of misdemeanor driving while suspended or revoked, ORS 811.182,[1] arguing that the trial court erred in denying his motion to suppress evidence that an officer had obtained after stopping him for a traffic violation. Defendant argues that the officer did not have probable cause to initiate a traffic stop for failure to properly display registration plates when defendant drove with a single dealer plate displayed on the rear of his car. Defendant specifically contends that the officer's subjective probable cause was not objectively reasonable, because dealer vehicles may lawfully display only a single plate. The state responds that defendant invited the error that he now challenges on appeal, because he argued to the trial court that the applicable standard for a traffic stop was reasonable suspicion; that is, he did not contend that the officer was required to have probable cause to make the stop. The state alternatively argues that the officer had probable cause to justify the traffic stop.[2] We conclude that the officer lacked probable cause to detain defendant when he initiated the traffic stop and, therefore, that the trial court erred in denying defendant's motion to suppress. Accordingly, we reverse and remand.

"We review the trial court's denial of defendant's motion to suppress for legal error, and we are bound by the court's express and implicit findings of fact, if there

---

[1] ORS 811.182 has been amended since defendant's conviction, but those amendments have no bearing on our analysis. We therefore cite the current statute.

[2] The state makes two additional arguments in support of the trial court's ruling. First, the state argues that we should recognize reasonable suspicion of a traffic violation as sufficient to justify a traffic stop. Second, the state argues that a reasonable mistake of law should not "defeat probable cause." The state acknowledges that both arguments represent a departure from our case law. *See State v. Husk*, 288 Or App 737, 739, 407 P3d 932 (2017), *rev den*, 362 Or 665 (2018) ("Under Article I, section 9, of the Oregon Constitution, before a police officer may stop a citizen for a traffic violation, the officer must have probable cause to believe that a violation occurred."); *State v. Jones*, 286 Or App 562, 565 n 1, 401 P3d 271 (2017) (declining to revisit probable cause standard for traffic stops and declining to change standard to allow for probable cause to rest on reasonable mistakes of law). We are not persuaded to overrule those precedents. *See State v. Civil*, 283 Or App 395, 415-16, 388 P3d 1185 (2017) (a party seeking to have court overrule a prior decision bears the burden of persuading the court that the decision is "plainly wrong").

is constitutionally sufficient evidence in the record to support them." *State v. Lawson*, 300 Or App 292, 295, 454 P3d 20 (2019) (citing *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993)). We state the facts in accordance with that standard.

At approximately 2:00 a.m. one morning, Officer DeLong of the Portland Police Bureau saw defendant driving towards him in a car with no front plate of any kind. DeLong believed that defendant's failure to display a front license plate provided a lawful basis to stop defendant to investigate a potential traffic violation. DeLong initiated the stop by activating his patrol car's overhead lights and making a U-turn behind defendant. Upon completing the turn, DeLong observed a "dealer" plate displayed on the rear of defendant's car. *See* ORS 822.040 (authorizing, under specified circumstances, vehicles displaying dealer plates to be driven on public highways "whether registered or not"). In regard to the applicable standard for a traffic stop, DeLong agreed with defense counsel's characterization at the suppression hearing that, at the time DeLong had initiated the stop, he had possessed "'*reasonable suspicion* because [there was] no front plate.'" (Emphasis added.)

On direct examination, DeLong testified that, due to the early morning hour and because, in his experience, dealer plates are sometimes used to conceal the fact that a vehicle is stolen, he had run the dealer plate through his onboard computer system. He learned from the resulting report that the vehicle had not been reported stolen and that the plate was assigned to an "actual dealer." DeLong believed, however, that two plates were required on the vehicle, one on the front and one on the rear. DeLong explained at the hearing that, although there may be exceptions, "having only one plate on the vehicle is normally a traffic infraction."

Upon stopping defendant, DeLong told him that he had been stopped because his car did not have a front license plate. In the course of the stop, defendant admitted to DeLong that he did not have insurance and that "he was suspended at the felony level." The state later charged defendant by information with misdemeanor driving while suspended or revoked, ORS 811.182.

Defendant submitted a written motion to suppress the evidence that DeLong had obtained during the traffic stop; the trial court also received testimony and heard oral argument on that motion at the suppression hearing. Defendant's written and oral arguments were not entirely consistent with each other as to the applicable legal standard. Defendant contended in his written motion that the traffic stop required probable cause. At the suppression hearing, on the other hand, defendant's questioning of DeLong and his argument to the court focused on whether DeLong's subjective belief and the objective circumstances satisfied the reasonable suspicion standard. For its part, the state also discussed the stop in terms of reasonable suspicion, though at one point the state more generally argued that DeLong had had "sufficient cause to initiate the stop." Seemingly following the parties' lead, the trial court also discussed its ruling in terms of reasonable suspicion rather than probable cause.

In disputing whether DeLong had reasonable suspicion to support the traffic stop, defendant asserted that DeLong's subjective suspicion was not objectively reasonable, because the law only requires dealer vehicles to display a single plate to the rear of a vehicle, as his car displayed here. Defendant acknowledged that no statute specifically stated that rule, but he referred the court to the "Vehicle License Plate Manual published by the Oregon Department of Transportation," which, he contended, explained that the motor vehicle division (DMV) issues only one dealer plate for each dealer vehicle. However, despite having identified DMV's license-plate manual as being appropriate for judicial notice, defendant does not appear to have actually asked the trial court to take judicial notice, and there is no indication in the record that the court did so. Nonetheless, relying on the manual as legal authority, defendant argued to the trial court that there had been no lawful basis for DeLong's suspicion that defendant had committed a traffic offense. Without that basis for the stop, defendant contended, DeLong had only a general suspicion in light of the early morning hour, and, because that fact was not particularized to defendant, it was insufficient to justify the traffic stop.

        In response, the state emphasized that the early-morning hour was an unconventional time for a person to be legitimately driving a dealer vehicle; the state implied that the time of the encounter gave DeLong reason to question whether defendant was, in fact, an authorized driver of the vehicle.[3] The state further argued that, at least as of the time that he first encountered defendant's car, DeLong's observation that it had no front plate gave rise to reasonable suspicion to stop the vehicle because, "[u]nder the proper circumstances, that is a traffic infraction." According to the state, DeLong's recognition of the dealer plate before he had effectuated the stop created "a separate issue," but it did not invalidate the stop. At the suppression hearing, the state reasoned that, once DeLong had recognized the dealer plate as such, he was permitted to consider existing restrictions on the use of those plates and whether such restrictions appeared inconsistent with driving at "2:30 in the morning in an area that is far removed from other dealers." The state also emphasized DeLong's awareness that dealer plates "are often used to hide criminal activity," such as concealing stolen vehicles and the identities of persons who drive them. In the state's view, there were multiple justifications for the stop:

> "Whether there was a single plate, whether there were geographic [or] temporal restrictions on the use of the plate, whether there was a traffic violation related to the front of the plate, none of those things matter to the extent that once he has reasonable suspicion to stop that car to investigate the violation of those ORSs, he has to complete the stop."

        The trial court agreed with the state that defendant had committed a traffic offense and concluded that there "certainly was, and I don't think there's argument there

---

[3] ORS 822.040(1)(a) provides, in part:

"A dealer is authorized *** to use and operate over and along the highways of this state all vehicles displaying the dealer's plates whether registered or not or whether or not a title is issued for the vehicle. This paragraph does not authorize dealers to use or operate vehicles under dealer plates unless the vehicles are actually owned or controlled by the dealer and in actual use by the dealer, members of the dealer's firm, any salesperson thereof or *any person authorized by the dealer.*"

(Emphasis added.)

wasn't, reasonable suspicion at the time the officer signaled for the vehicle to stop." The court further reasoned that, "[u]nder Oregon law, vehicles operated on public roads must be registered and two plates are required for a vehicle that must be registered with inapplicable exceptions here." The court later clarified that it was "relying upon * * * the reasonable improbability of there being an exception that would be applicable here for the operation of a vehicle on a public road with only one plate." As a result, the court denied defendant's motion to suppress and, following a bench trial, found him guilty of driving while suspended or revoked, ORS 811.182. Defendant appeals the resulting judgment of conviction.

We begin with the state's contention that defendant invited or waived any error as to the existence of probable cause by arguing his motion in terms of reasonable suspicion. Although the state argues on appeal that the standard for traffic stops *should* be reasonable suspicion, it is undisputed that, at the suppression hearing, both the parties and the trial court were misguided in discussing defendant's motion in terms of reasonable suspicion. Defendant argues, however, that, notwithstanding that shared misunderstanding, he sufficiently preserved his probable-cause argument by raising it in his written motion; in defendant's view, we may review the trial court's decision under the appropriate standard because the record is sufficient to determine whether DeLong had probable cause. The state reasons that defendant effectively abandoned his written argument by repeatedly arguing to the trial court that the state was required to establish reasonable suspicion to justify the traffic stop. Thus, the state argues, defendant either invited the challenged error with respect to probable cause or has otherwise voluntarily waived his right to challenge that error on appeal.

We conclude that defendant sufficiently preserved his probable-cause argument and that the invited-error doctrine does not preclude its consideration on appeal. "The [invited-error] rule applies when a party has invited the trial court to rule in a certain way under circumstances suggesting that the party will be bound by the ruling or at least will not later seek a reversal on the basis of that ruling." *State v.*

*Sanders*, 294 Or App 102, 106, 429 P3d 1049 (2018), *rev den*, 364 Or 294 (2019); *see also State v. Ferguson*, 201 Or App 261, 270, 119 P3d 794 (2005), *rev den*, 340 Or 34 (2006) ("The point of the doctrine is to ensure that parties do not 'blame the court' for their intentional or strategic trial choices that later prove unwise and then, to the trial court's surprise, use the error that they invited to obtain a new trial.").

Defendant's arguments to the trial court do not implicate the invited-error doctrine. Defendant's error cannot be said to have been an intentional or strategic one, because, if anything, it lowered the state's burden of proof and disadvantaged defendant. Moreover, nothing about the way in which defendant argued that DeLong was required to have reasonable suspicion—as opposed to probable cause—suggested in any way that he was agreeing to be bound by a ruling and would not challenge it later. *See State v. Dallavis*, 294 Or App 567, 575, 432 P3d 282 (2018), *rev den*, 364 Or 535 (2019) (defendant invited error when he represented that he had no objections to being tried on a defective indictment). Defendant consistently maintained that the traffic stop was not lawful, and, other than mislabeling the applicable standard as reasonable suspicion, he argued all of the facts and law just as his written motion did under the more appropriate probable-cause standard. Notably, the state does not contend that the record would have developed in any meaningfully different way had defendant argued his motion in terms of probable cause at the suppression hearing. *See State v. Alatorre*, 305 Or App 71, 74 n 1, 469 P3d 216 (2020) (remanding where the trial court had erred in denying a motion to suppress and we were not "confident that the trial court's error did not impede the development of the record by the parties below"). Under the circumstances, it is appropriate to consider the merits of defendant's arguments on appeal.

Proceeding to the merits, the parties dispute whether DeLong had probable cause to stop defendant for improperly displaying plates under ORS 803.540. That statute, in relevant part, states:

> "(1)   A person commits the offense of failure to display registration plates if the person operates, on the highways

of this state, any vehicle or camper that has been assigned registration plates by this state and the registration plates assigned to the vehicle or camper are displayed in a manner that violates any of the following:

"(a)   The plate must be displayed on the rear of the vehicle, *if only one plate is required*.

"(b)   Plates must be displayed on the front and rear of the vehicle *if two plates are required*."

(Emphases added.) As we recently held, the display requirements for *registered* vehicles under ORS 803.540 are informed by ORS 803.525, which "establishes a general rule requiring that the Department of Transportation 'issue two registration plates for every vehicle that is registered by the department.'" *State v. Blueback*, 291 Or App 779, 783, 422 P3d 385 (2018). Thus, for purposes of ORS 803.540(1)(b), "two plates are required" for most vehicles, meaning that drivers typically must display registration plates on the front and rear of vehicles that they drive on public highways. *Id*.[4]

We understand defendant to argue that, because a dealer vehicle is not a registered vehicle—one that, in terms of ORS 803.540, "has been assigned registration plates by this state"—it is not a vehicle for which the requirements of ORS 803.525 apply; that is, a dealer vehicle is not one for which DMV "shall issue two registration plates." Thus, defendant contends, ORS 803.540(1)(b)'s requirement that vehicles display two plates cannot have applied to the dealer vehicle that he was driving, and DeLong's mistaken belief that it did apply could not have established an objectively reasonable basis for probable cause.

Defendant recognizes that, under a different statute, ORS 822.045(1)(h), dealer vehicles are required to display any *dealer* plate that has been issued for a vehicle "in the manner provided in ORS 803.540." ORS 822.045(1)(h) states:

"A person commits the offense of improper display of dealer plates if the person operates over and along the

---

[4] In relevant part, ORS 803.525(1) provides that the "Department of Transportation shall issue two registration plates for every vehicle that is registered by the department except as otherwise provided in this section." Defendant's suppression hearing occurred before we issued our decision in *Blueback*.

highways of this state any unregistered vehicle owned or controlled by the dealer and *any dealer plates issued* are not displayed in the manner provided in ORS 803.540 for the display of registration plates."

(Emphasis added.) However, defendant contends, because dealer vehicles are issued only a single plate, they need only comply with ORS 803.540(1)(a), which requires only a single plate displayed on the rear of a vehicle.

To support that statutory argument, defendant explains that DMV's license-plate manual—consistent with the terms of ORS 803.540—provides that a single plate is to be displayed on the rear of unregistered vehicles owned or controlled by a dealer. Thus, in defendant's view, the facts as DeLong perceived them—a vehicle with a single dealer plate displayed on the rear—could not have supported probable cause, because, as a matter of law, they did not constitute a violation.

Defendant acknowledges that "the dealer plate rule is not a 'necessary element' of failing to display a front license plate [but, r]ather, it is a statutory exemption." *See State v. Bourget-Goddard*, 164 Or App 573, 578, 993 P2d 814 (1999), *rev den*, 330 Or 331 (2000) ("In determining whether probable cause exists to support a stop, * * * the state is [not] required to eliminate the possible applicability of defenses or statutory exemptions that do not describe a necessary element of the offense itself."). However, defendant argues that, once DeLong saw the dealer plate, he was aware that the exemption applied, and that awareness dissipated any probable cause he may previously have had to stop defendant's car. *See id.* at 579 (stating "actual knowledge" of an applicable exemption may render observed facts that would otherwise constitute a violation insufficient to establish probable cause).

The state rejects defendant's reading of the statutes. According to the state, "the facts as Officer DeLong perceived them satisfied the elements of a traffic infraction," and, therefore, he had probable cause to make the stop. Relying on our holding in *Blueback*, the state argues that ORS 803.540 and ORS 803.525 together require most vehicles to display two plates, and, as applicable to defendant's

car, ORS 822.045(1)(h) requires a vehicle to display dealer plates "in the manner provided in ORS 803.540," *i.e.*, one on the front and one on the back. The state does not challenge defendant's reading of the DMV manual, but the state argues that the manual is not a controlling source of law. Therefore, according to the state, defendant has identified no statutory or other controlling authority establishing the existence of an exemption to ORS 803.540 that would have rendered DeLong's interpretation of the facts a mistake of law. Thus, the state argues, DeLong's subjective belief that he had probable cause was objectively reasonable.

"Whether the facts establish probable cause to stop someone for a traffic violation is a question of law that we review for legal error." *State v. Husk*, 288 Or App 737, 739, 407 P3d 932 (2017), *rev den*, 362 Or 665 (2018). To stop a citizen for a traffic violation, Article I, section 9, of the Oregon Constitution requires that an officer "have probable cause to believe that a violation occurred." *State v. Ankeny*, 306 Or App 300, 302, 474 P3d 406 (2020) (internal quotation marks omitted). To have probable cause, an "officer must subjectively believe that an offense occurred" and that "subjective belief must be objectively reasonable." *Id.* (internal quotation marks omitted). "In order to satisfy the objective component, the facts that the officer perceives to exist must establish the elements of *an* offense, even if not the offense that the officer believed the defendant committed." *Id.* at 302-03 (emphasis in original; internal brackets and quotation marks omitted). That is, "probable cause may be based on a mistake of fact" or "on a mistake as to *which* law the defendant violated." *State v. Boatright*, 222 Or App 406, 410, 193 P3d 78, *rev den*, 345 Or 503 (2008) (emphasis in original). However, probable cause may not be based on a mistake of law—even a reasonable mistake—causing an officer to incorrectly believe that a person's conduct constitutes a violation of the law when it does not. *State v. Jones*, 286 Or App 562, 565 n 1, 401 P3d 271 (2017). "Finally, although the facts as perceived by the officer must constitute the elements of an offense, an officer need not eliminate the possibility that a defense or exception to the offense applies." *State v. Tiffin*, 202 Or App 199, 204, 121 P3d 9 (2005).

Here, defendant does not dispute that DeLong had subjective probable cause to make a stop; he only challenges the trial court's conclusion that DeLong's belief was objectively reasonable. Further, defendant accepts the characterization of his purported "dealer plate rule" as an exception to the broader statutory requirement that vehicles such as the one he was driving display two plates. As noted, however, defendant maintains that DeLong must have been aware that the exception applied when he saw the dealer plate on the rear of the car; therefore, any continued belief that defendant's operation of the vehicle without a front plate constituted a traffic violation was the result of a mistaken understanding of law and, therefore, not objectively reasonable.

We conclude that the trial court erred in denying defendant's motion to suppress. The premise of the state's argument in support of the trial court's ruling is that, because vehicles such as defendant's are required to display two plates under ORS 803.540(1)(b), DeLong's belief that defendant was driving in violation of that requirement was legally correct, even after he discovered that defendant had a lawfully issued dealer plate displayed on the rear on his vehicle. We disagree.

The basis of our earlier decision that, for purposes of ORS 803.540(1)(b), "two plates are required" for most vehicles, was the related requirement, under ORS 803.525, that the Department of Transportation "issue two registration plates for every vehicle that is registered by the department except as otherwise provided." *Blueback*, 291 Or App at 783. However, not only, as defendant emphasizes, are dealer vehicles not required to be registered,[5] they also are not issued plates under authority of ORS 803.525. Rather, dealer plates are issued under ORS 822.040, and they are not issued in connection with individual vehicles, but in connection with dealers as a whole. Specifically:

> "A dealer is entitled to receive dealer plates or devices and replacement or additional plates or devices. *As many*

---

[5] ORS 803.305(15) provides that "[v]ehicles operated or used by vehicle dealers may be operated or used without registration as provided under ORS 822.040."

*additional plates as may be desired* may be obtained upon the filing of a formal application for additional plates with the Department of Transportation. The plates issued to dealers shall require the payment of fees as provided under ORS 805.250."

ORS 822.040(1)(b) (extending certain privileges to holders of current, valid vehicle dealer certificates) (emphasis added).

Thus, unlike registered vehicles subject to ORS 803.525, for which the Department of Transportation must issue two registration plates per vehicle—at least for passenger vehicles like defendant's—there is no requirement that the department issue any specific number of dealer plates in connection with each dealer vehicle. That is, there is no presumption that the department will issue two plates for each dealer vehicle, much less that two plates are "required" for each such vehicle. Indeed, to the extent that the legislature contemplated a specific number of plates per dealer vehicle, there is at least some suggestion in the statutory context that it contemplated a single plate. *See* ORS 805.250(4)(a) (governing plate fees and referencing dealer plates, in part, in the singular, as follows: "For *the* original dealer plate, no fee except the fee established under ORS 803.570." (emphasis added)).

As a result, the support we found in ORS 803.525 for our conclusion in *Blueback*—that vehicles typically are required to display two registration plates—has no bearing on whether two *dealer* plates are required under ORS 803.540(1). And, other than our reasoning in *Blueback*, the state offers no rationale for construing ORS 803.540(1) to require dealer vehicles to display more than a single plate.[6] In light of the specific statutes governing dealer plates and the absence of any rationale to conclude that "two plates are required," ORS 803.540(1)(b), for a dealer vehicle such as defendant was driving, we conclude that ORS 803.540 only requires a dealer vehicle to display a plate on the rear of

---

[6] Given that ORS 822.045(1)(h) requires an unregistered vehicle operated by a dealer on a public highway to display any dealer plates "in the manner provided in ORS 803.540 for the display of registration plates," and that ORS 822.040 (1)(a) creates an exception allowing unregistered vehicles to be driven on public highways for "all vehicles displaying the dealer's plates," we assume that ORS 803.540 requires dealer vehicles to display at least one plate.

the vehicle. *See* ORS 803.540(1)(a) (requiring "[t]he plate [to] be displayed on the rear of the vehicle, if only one plate is required").

It follows that the facts as DeLong perceived them—namely, a vehicle bearing a dealer plate issued to an "actual dealer" and displaying that plate on the rear of the vehicle—did not objectively support the belief that defendant was operating a vehicle in violation of the law. It further follows that the trial court erred in denying defendant's motion to suppress on that basis. Accordingly, we reverse and remand for further proceedings.[7]

Reversed and remanded.

---

[7] In light of our conclusion based on the text and context of ORS 803.540, it is unnecessary to further consider whether DMV's license-plate manual should be viewed as a controlling source of law or otherwise persuasive authority, regardless of whether it was subject to judicial notice. However, we note that, unlike, for example, the Secretary of State Initiative and Referendum Manual, which the Secretary of State has adopted as an administrative rule, *see* OAR 165-014-0005 (adopting manual into law), the Department of Transportation does not appear to have adopted the license-plate manual into law.