Argued and submitted January 24, affirmed March 23, petition for review denied July 28, 2022 (370 Or 197)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TRACY LYN JACOBY,
*Defendant-Appellant.*

Clackamas County Circuit Court
19CR31665; A173798

508 P3d 69

Defendant appeals a judgment of conviction for giving false information to a police officer, ORS 807.620, and unlawful possession of methamphetamine, ORS 475.894(2)(b) (2017), amended by Ballot Measure 110 (2020), Or Laws 2021, ch 591, § 39. She was charged with those crimes based on evidence obtained during a traffic stop. Before trial, defendant filed a motion to suppress that evidence, which the trial court denied. On appeal, defendant assigns error to the trial court's denial of her motion to suppress, arguing that the underlying traffic stop for "impeding traffic" under ORS 811.130 was not supported by probable cause. *Held*: Because defendant's vehicle remained stationary at a green light, did not proceed until several seconds had elapsed, accelerated slowly, and travelled 300 feet at a top speed of not more than half the posted speed limit, the officer had probable cause to believe defendant had impeded or blocked the normal and reasonable movement of several cars driving behind defendant.

Affirmed.

Todd L. Van Rysselberghe, Judge.

Francis C. Gieringer, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jon Zunkel-deCoursey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Sercombe, Senior Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Defendant appeals a judgment of conviction for giving false information to a police officer, ORS 807.620, and unlawful possession of methamphetamine, ORS 475.894 (2)(b) (2017), *amended by* Ballot Measure 110 (2020), Or Laws 2021, ch 591, § 39. She was charged with those crimes based on evidence obtained during a traffic stop. Before trial, defendant filed a motion to suppress that evidence, which the trial court denied. On appeal, defendant assigns error to the trial court's denial of her motion to suppress, arguing that the underlying traffic stop for "impeding traffic" under ORS 811.130 was not supported by probable cause.[1] We conclude that the trial court did not err when it denied defendant's motion to suppress; therefore, we affirm.

"We review the trial court's denial of defendant's motion to suppress for legal error, and we are bound by the court's express and implicit findings of fact, if there is constitutionally sufficient evidence in the record to support them." *State v. Hughes*, 311 Or App 123, 124-25, 488 P3d 795 (2021). Consistent with that standard, we "draw the following facts from the testimony presented at the suppression hearing and from the trial court's findings of fact." *State v. Parnell*, 278 Or App 260, 261, 373 P3d 1252 (2016) (citation omitted).

At around 11:00 p.m. one evening, Gladstone Police Sergeant Okerman was driving northbound in his patrol car, came to an intersection, and stopped at a traffic light. The road had two northbound lanes, and Okerman was in the "left-hand fast lane." While stopped at the light, Okerman saw defendant's car stopped next to him in the right-hand northbound lane. Traffic "was very light," but there were "several cars behind [defendant's car] that were also stopped." Okerman believed that defendant's vehicle had expired registration stickers on the license plate.

---

[1] ORS 811.130 provides, in part:

"(1) A person commits the offense of impeding traffic if the person drives a motor vehicle or a combination of motor vehicles in a manner that impedes or blocks the normal and reasonable movement of traffic."

After the light turned green, defendant's car did not move for "several seconds." Okerman "could see the driver was facing ahead and it appeared that the driver would have recognized the green light, but [she] had not moved." Eventually, Okerman "felt like [he] had to start moving, because [he] was now holding up the vehicle behind" him. When Okerman began moving, defendant's car began to drive forward, too. Defendant "wasn't accelerating at a normal rate," and, "after several seconds, [defendant's car] was only driving at 20 miles per hour, which is half of the posted limit" of "40 miles per hour." At that point, "[t]he vehicle directly behind [D's car] was less than a half a car lane behind it, because it was traveling so below the speed limit." Okerman observed that "there were no vehicles in front of [defendant]" and no "weather conditions" or "traffic patterns" that would explain defendant's driving. Okerman activated his turn signal and changed lanes to follow defendant. Defendant drove for 300 feet, then turned right into the parking lot of a medical supply company. Okerman followed defendant into the parking lot and activated his overhead lights, believing that he had probable cause to stop defendant for expired registration stickers and impeding traffic.

During that stop, Okerman spoke to defendant, who said she had been trying to let Okerman's patrol car go by her. In addition, Okerman discovered that defendant had a valid temporary permit mounted to her car window, which Okerman could not see before stopping defendant's car. Also during the stop, Okerman determined that defendant provided a false name and date of birth, and that defendant had two glass pipes in her car that appeared to contain—and field-tested positive for—methamphetamine. Okerman subsequently arrested defendant for providing false information and possession of methamphetamine.

Before trial, defendant moved to suppress all evidence obtained as a result of the traffic stop, arguing that Okerman lacked probable cause to believe defendant had impeded traffic when Okerman initiated the stop. At a hearing on the motion to suppress, the trial court determined that, based on Okerman's testimony, there was probable

cause to believe defendant was impeding traffic. In reaching that conclusion, the court explained,

> "[ORS 811.130] identifies two actions a driver can take momentarily that would be allowed. One is stopping to allow oncoming traffic to pass before mak[ing] a right-hand or left-hand turn. The other is stopping in preparation of or moving at an extremely slow pace while negotiating an exit from the road.

> "In this case, *** there is evidence that I find credible that she was moving at an extremely slow pace and it was not for the purpose of negotiating an exit from the road.

> "And I believe that based on the fact that another car behind her was nestled up to her bumper because she was moving so slowly, that it could not move any slower.

> "*****

> "*** [S]he was slowing because she wanted the officer to pass her by, not because she was trying to negotiate an exit.

> "*****

> "So because I find that [Okerman] did have probable cause *** based on the evidence that she was impeding traffic, *** that was sufficient for him to make the contact ***. So I am denying the motion to suppress in its entirety."

On appeal, defendant challenges the trial court's denial of her motion to suppress. She argues that, "under the totality of the circumstances, Sergeant Okerman lacked objectively reasonable probable cause that defendant had impeded traffic." In response, the state argues that "the trial court correctly denied defendant's suppression motion," because "defendant's driving impeded the normal flow of traffic by preventing the car behind her from traveling at a normal speed," so "Okerman had probable cause to believe that defendant impeded traffic" under ORS 811.130.

An officer may lawfully stop and detain a person for a traffic infraction if the officer has "probable cause to believe that an infraction has been committed." *State v. Tiffin*, 202 Or App 199, 203, 121 P3d 9 (2005) (internal quotation marks omitted). Probable cause has two components: "First, at the time of the stop, the officer must subjectively

believe that a violation has occurred, and second, that belief must be objectively reasonable under the circumstances." *State v. Carson*, 287 Or App 631, 634, 404 P3d 1017 (2017).

Here, neither party contends that Okerman did not subjectively believe that a traffic violation occurred; rather, the parties dispute whether Okerman's belief was objectively reasonable. "For an officer's belief to be objectively reasonable, the facts, as the officer perceives them, must actually constitute a violation." *Id.* Thus, the issue on appeal is whether the facts as perceived by Okerman actually constituted impeding traffic, a violation of ORS 811.130.

ORS 811.130 provides, in part:

"(1)   A person commits the offense of impeding traffic if the person drives a motor vehicle or a combination of motor vehicles in a manner that impedes or blocks the normal and reasonable movement of traffic.

"(2)   A person is not in violation of the offense described under this section if the person is proceeding in a manner needed for safe operation.

"(3)   Proceeding in a manner needed for safe operation includes but is not necessarily limited to:

"(a)   Momentarily stopping to allow oncoming traffic to pass before making a right-hand or left-hand turn.

"(b)   Momentarily stopping in preparation of, or moving at an extremely slow pace while, negotiating an exit from the road.

"(4)   A person is not in violation of the offense described under this section if the person is proceeding as part of a funeral procession under the direction of a funeral escort vehicle or a funeral lead vehicle."

We previously addressed probable cause under ORS 811.130 in *Tiffin*, 202 Or App 199. There, officers observed the defendant driving "between 28 and 30 miles per hour" on a road that had a posted speed limit of 40 miles per hour. *Id.* at 201. There was "no ice on the roads and it was not raining or snowing." *Id.* The officers followed the defendant's car for "approximately one mile," during which time "there were no other cars on the road." *Id.* Along that mile

of road, there were "several turnouts that defendant could have pulled into to allow the officers to pass," and "a passing lane or a passing zone where the officers could have safely passed defendant." *Id.* Officers stopped the defendant for impeding traffic. *Id.* We concluded that the officers lacked probable cause to believe that the defendant had impeded traffic, because "[the officers'] progress was slowed by their choice to investigate their suspicions by following him, not by defendant's driving," *id.* at 205, and because the defendant's "speed was not significantly below the speed limit, there were no other cars on the road, and, if the officers' vehicle was blocked at all, it was for a very short distance," *id.* at 206.

By contrast, we held that a stop for impeding traffic under ORS 811.120 was supported by probable cause in *Carson*, 287 Or App 631. There, the defendant's car "was completely stopped in the right lane of traffic just before an intersection." *Id.* at 632. There was "no stop sign or traffic light at the intersection, and no pedestrians were crossing in front of defendant's car." *Id.* The officer "pulled up behind the [defendant's] car," waited for "approximately 5 seconds," and sounded the horn. *Id.* After "another few seconds," the defendant's car still had not moved, so the officer initiated a traffic stop for impeding traffic. *Id.* We concluded that the officer had probable cause to believe that the defendant had impeded traffic because the "defendant's car was completely stopped and blocked an entire lane of travel," which "altered the normal movement of traffic." *Id.* at 637.

This case is more like *Carson* than *Tiffin*. Here, similar to *Carson*, defendant's car was stopped in her lane for "several seconds" despite having a green light. Once defendant eventually began moving, she "wasn't accelerating at a normal rate"—*i.e.*, "after several seconds," defendant's speed had increased to only 20 miles per hour on a road with a posted speed limit of 40 miles per hour, and she continued at a slow rate of speed for 300 feet. Also like *Carson*, "there were no vehicles in front of her," nor were there any "weather conditions" or "traffic patterns" that would explain defendant's driving. And, perhaps most significantly, here— unlike *Tiffin*, where there were no other drivers on the road

except the officers, who could have safely passed the defendant but chose not to—there were "several cars" stopped behind defendant's car at the light, and, once defendant did begin moving, the car immediately behind her was "nestled up to" defendant's bumper, because defendant's car "was traveling so below the speed limit."

Because defendant's vehicle remained stationary at the green light and did not proceed until several seconds had elapsed, then accelerated slowly (*i.e.*, not "at a normal rate"), and travelled 300 feet at a top speed of not more than half the posted speed limit, we conclude that defendant operated her vehicle in a manner that impeded or blocked the normal and reasonable movement of the "several" cars behind her.

In reaching that conclusion, we reject defendant's contention that Okerman lacked probable cause because "defendant was permitted to move 'at an extremely slow pace while negotiating an exit from the road'" under the exception described in ORS 811.130(3)(b). "The exceptions described in ORS 811.130(2) to (4) are plainly set out as exceptions that stand apart from the description of the elements of the offense that are specified in ORS 811.130(1)." *State v. Chen*, 266 Or App 683, 688-89, 338 P3d 795 (2014) (brackets and internal quotation marks omitted). To establish probable cause, "the facts as perceived by the officer must constitute the *elements* of an offense, [but] an officer need not eliminate the possibility that a defense or exception to the offense applies." *Tiffin*, 202 Or App at 204 (emphasis in original). Here, the facts as perceived by Okerman were sufficient for him to establish probable cause that defendant was impeding traffic, and Okerman was not also required to eliminate the possibility that the exception in ORS 811.130(3)(b) applied to defendant.[2]

Relying on *Tiffin*, defendant remonstrates that "[m]erely driving slower than the posted speed limit for a brief distance is not impeding traffic." The text of ORS 811.130

---

[2] Indeed, the trial court ultimately found that defendant did not drive in the manner that she did because she was preparing to turn. The trial court found that "[defendant] was moving at an extremely slow pace *because she wanted the officer to pass her by*, not because she was trying to negotiate an exit." (Emphasis added.)

is certainly written rather broadly, and it does not articulate with specificity what actions qualify as "imped[ing] or block[ing] the normal and reasonable movement of traffic." As such, it is difficult to discern the outer bounds of that statute's applicability.

We note, however, that when the 1975 Interim Committee on Judiciary was working on the provisions of the Vehicle Code concerning the offense of impeding traffic, it also contemplated the concept of providing minimum speed limits, but it "rejected this concept based on its consideration that *the offense of impeding traffic \*\*\* cover[s] the problem of the slow driver*." Proposed Revision, Oregon Vehicle Code, Committee on Judiciary, § 81 (Jan 1975) (emphasis added). Defining the boundaries of this state's Vehicle Code is unquestionably a function of the legislature, and the precise boundaries of ORS 811.130 are difficult to discern. We nevertheless conclude that, under the provisions of ORS 811.130 and this court's case law construing that statute, Okerman had probable cause to stop defendant for impeding traffic—particularly because defendant was not merely driving slowly; as noted above, she was stopped at a green light for "several seconds" and, when she eventually proceeded, drove no faster than 20 miles per hour below the posted speed limit for 300 feet in such a way as to impede or block the normal and reasonable movement of the several cars behind her.

For the foregoing reasons, we conclude that the trial court did not err when it determined that Okerman had probable cause to stop defendant for violating ORS 811.130 and denied defendant's suppression motion; therefore, we affirm.

Affirmed.